JACKSON YATES AND THE PENSACOLA & ATLANTIC RAILROAD COMPANY, APPELLANTS, VS. GADI YATES, APPELLEE.

When a party contracts for the purchase of land with a special agent of the owner, he should acquaint himself with the extent of the agent's power; for when the agent exceeds his authority, the principal is not bound unless he in some manner subsequently ratifies the act of the agent.

Appeal from the Circuit Court for Washington county.

Judge Broome, of the Seventh Circuit, sat in place of the Chief-Justice, disqualified.

The facts of the case are stated in the opinion.

*W. A. Blount* for Appellants.

*D. L. McKinnon* for Appellee.

The appellee in this case purchased of VanKirk, the advertised and recognized agent of the S. and A. R. R. Co., the lands in question, received a full receipt for purchase

money, containing a clause putting him in possession, promising deed as soon as it could be made out, without any intimation as to the qualification of his power to do so, or that the sale required the confirmation of Chipley, or any one else. There is an abundance of evidence to show that the same kind of receipt signed by VanKirk as agent had been frequently taken up and recognized as binding upon the company. Whatever may have been the private understanding between VanKirk and the railroad company as to selling, subject to company's approval, it does not affect third parties who purchased absolutely without knowledge of the qualified power, and was put in absolute possession by the receipt. They are, therefore, estopped from denying the authority of VanKirk to make the sale. Eureka Co. vs. Bailey Co., 209 ; 22 Book of L. C. P. Co., U. S. Rep.; Bronson Exs. vs. Chappell, 436, idem ; Bank of Montgomery vs. Plannett's, Adminst., 37 Ala., 22; Buchanan et al., vs. Upham, 1st U. S. Rep., 56. VanKirk must stultify himself if he denies his full authority to bind the company in the sale of lands. See receipt given and evidence of his advertisement of his agency, as well as the evidence as to the recognition of the company of his authority by making deeds under his previous as well as subsequent sales. Even though Chipley may have on one, two or a half dozen occasions refused to make deeds in accordance with sales made by VanKirk, whom he held out to the world as agent to make sales, it is simply evidence of an arbitrary disposition and establishes no right upon his part to do so. Had the parties to whom he refused deeds resorted to the remedy the appellee did, the probability is that they would have obtained their deed just as appellee did.

I attach no importance to the point argued by the appellant as the rule adopted by them in selling lands of the

66 SUPREME COURT.

Jackson Yates and P. & A. R. R. v. Gadi Yates—Opinion of Court.

company to those who lived upon them. This was a self-imposed rule which they might and often did transgress whenever their convenience or interest demanded it. It was of no legal binding force upon anyone, and is now only resorted to for the purpose of excusing their bad faith with the appellee.

But admitting, for the sake of argument, that the rule was binding, is it applicable in this case, which shows that the appellee was not only equally, but much more interested in the improvements, than Jackson Yates. Who does the evidence show invested the greatest amount of money in the improvements? Is it not the appellee?

It appears from the evidence that Jackson Yates, one of the appellants, had full knowledge of the purchase of appellee before he purchased or paid one cent on the land, and he thereby colluded with the railroad company to defraud the appellee by accepting a deed.

On this point see White vs. Cannon, Book 18, L. C. P. Co., U. S., 923; Hilliard on Vendors, vol. 1, p. 4, sec. 12, and note A citing Perterson vs. Orr, 12 Geo., 464.

JUDGE BROOME delivered the opinion of the court:

The appellee filed his bill in said court against the appellants, praying that a certain deed, made and executed by the appellant, the Pensacola & Atlantic Railroad Company, to the appellant, Jackson Yates, conveying the northwest $\frac{1}{4}$ of southeast $\frac{1}{4}$ of section 3, in township 3, north of range 16, west, be cancelled, and that said Pensacola & Atlantic Railroad Company be directed to execute a deed of said land to the appellee, and, upon the hearing, the Chancellor granted the relief prayed and a decree to that effect was entered on the 19th day of May, A. D. 1885. The appellee, in his bill, as ground for said relief, states " that

on the 23d day of March, A. D. 1883, he went to the office of W. J. VanKirk, special agent of said company for sale of its lands, and purchased from him, as said agent, for fifty dollars, which he then and there paid for the said land, but that said company not having deeds prepared to deliver, the said VanKirk, as said agent, gave him a receipt for said purchase money in full, stating in the receipt that it gave him full possession of said land, and that it would be taken up by deed signed by the officers of said railroad company," attaching a copy of said receipt as an exhibit, which sustains the allegations as to its contents, and "that he (the appellee) continued in the possession of said land which he previously had, he and Jackson Yates (one of the appellants), as partners, having owned and operated a grist mill upon it for ten or eleven years." Appellee further states that instead of said company giving him a deed, as agreed by their agent, the said agent wrote him, a month or two afterwards, proposing to give him a joint deed with the said Jackson Yates (appellant) to said land, which Jackson Yates claimed as his home. To this proposal the appellee refused to accede, and a deed was made by said company to said Jackson Yates. The bill further alleges that "said Jackson Yates knew of the purchase by the appellee at the time he received his deed to said land, and came to him (the appellee) to pay for a half interest before he got his deed." Then follow charges of collusion, &c., between appellants to defraud him.

To which bill the appellants made separate answers.

The Pensacola & Atlantic Railroad Company acknowledge that its agent, VanKirk, did receive fifty dollars from appellee for the purchase of forty acres of land, but that by mistake he described in his receipt the land in controversy, while it should have been the northwest $\frac{1}{4}$ of the southwest $\frac{1}{4}$ of the same section, which latter piece the ap-

68 SUPREME COURT.

Jackson Yates and P. & A. R. R. v. Gadi Yates—Opinion of Court.

pellee had applied for by letter, dated February 7th, 1882, stating that he had improvements on the same. The letter is attached to the answer, and sustains it in that respect. The company also answers that all sales or contracts for sales by VanKirk were made subject to approval by the company. The answer also denies having sufficient information to say what, if any, interest appellee had in the improvements upon the land in question. Further, that Jackson Yates on 23d April, 1883, applied to it to purchase the said NW¼ of SE¼, also stating that all his possessions and buildings were upon that land, and as the company had published to the world that actual settlers upon their lands should be preferred in making sales they considered that said Jackson Yates was entitled to purchase it. Further answering it, believes that Gadi Yates (appellee) had knowledge of this rule of the company, and upon examining the sale lists found they had receipted to Gadi Yates for a different piece of land from that he had applied for, by mistake, and in compliance with the rule to sell to actual settlers and the first applicant, they submit that they are not bound by the receipt to Gadi Yates and are relieved from making him a deed to said land.

They also acknowledge that they have refused to execute a deed to Gadi Yates and have executed one to Jackson Yates to said land.

Jackson Yates, answering separately, says that he is informed and believes that Gadi Yates did pay VanKirk fifty dollars and got a receipt for the same, but had no knowledge if he claimed it as a purchase. That he is informed the railroad company have refused to make a deed to Gadi Yates, and that he (Jackson Yates) holds a deed to said land from the railroad company, he knew that Gadi Yates had and claimed to hold a receipt for said land.

He also knew he procured said receipt by mistake. That Gadi Yates has no interest in the improvements upon said land and had not at the date of the deed to him (Jackson Yates). He further says that he had lived upon said land before he procured a deed from the railroad company, for more than ten years. He had a dwelling house and valuable improvements upon said land. That Gadi Yates did not on March 23d, 1883, reside upon and occupy said land, but knew that he, Jackson Yates, did. That he applied to the railroad company for the purchase of said lands early in February, 1883, and by the terms of said company in selling its lands he had a preference over Gadi Yates, as he resided on the land and had made valuable improvements thereon. That he is now in possession of said land. That he is informed and believes that Gadi Yates never did apply to purchase said land until he, Jackson Yates, had made purchase of the same ; also alleges upon information and belief that the receipt given Gadi Yates for this land, instead of the land he had originally applied for, was a mistake of VanKirk's, the agent.

It appears from the answer of the railroad company that they had published to the world that in selling their lands they would give preference to those living and having improvements on their lands. This is fully sustained by the evidence on behalf of the appellants, as well as by the correspondence between the appellee and the officers of the company prior to the date of the receipt given by VanKirk, the agent, to him for purchase money of this land. Gadi Yates, in a letter to VanKirk, dated July 6th, 1883, complaining of the action of the company, states that "Jackson Yates did not make application for the land until the fall of 1882, while he, Gadi Yates, had applied in November, 1881, to Chipley," but it would seem from the reply of Chipley and Bonifay, officers of the company, that the ap-

70 SUPREME COURT.

Jackson Yates and P. & A. R. R. v. Gadi Yates—Opinion of Court.

plication of 1881 was for a different parcel of land, and it is nowhere disclosed by the evidence that any application was made by Gadi Yates for the land in controversy until the date of his receipt, 23d March, 1883, a date subsequent by his own admission to the time of application by Jackson Yates. VanKirk, the agent, also testifies that he gave Gadi Yates the receipt for the fifty dollars on his representation that he would make it all right with Jackson Yates.

The answer of the railroad company denies that VanKirk had power to sell lands, but says all his sales were subject to approval by W. D. Chipley, their Vice-President and Superintendent. This is sustained by the testimony for both parties: Frank Phillips, a witness on behalf of appellee, testifying that he ceased corresponding with VanKirk and addressed his applications to Chipley, direct because Chipley refused to ratify a sale VanKirk had made to him. Again, as early as December 13th, 1881, Chipley addressed a letter to Gadi Yates, the appellee, informing him that he was "the person to apply to for lands."

Upon learning that Jackson Yates lived and had improvements upon the land for which Gadi Yates held VanKirk's receipt for purchase money, which information of the company is fully sustained by the evidence before us, VanKirk offered to procure a deed to Gadi and Jackson Yates jointly to said land, which Gadi Yates positively refused; whereupon the railroad company refused to approve the sale contracted by VanKirk with Gadi Yates, and executed and delivered a deed to Jackson Yates for said land, which we think they had the power to do.

The receipt attached as an exhibit to the bill of complaint is signed by VanKirk as *special* agent. The testimony shows that his employment was special. He, himself, says he was a real estate agent and had the lands of

other parties as well as of the railroad company for sale. He had no authority to make an absolute contract binding the company to convey its lands, and the extent of his agency could have easily been ascertained by the appellee, even if he had not been informed long previous to this transaction by letter that Chipley, the Vice-President, was the party to apply to for the purchase of lands.

The general rule is, " if a *special* agent exceeds his authority the principal is not bound unless the latter in some way subsequently ratifies the act." 1 Parson's on Contracts, 42, citing many authorities, English and American.

We are, therefore, of the opinion that the Pensacola & Atlantic Railroad Company were not bound by the act of VanKirk in this case.

Also that the circumstances of the case do not entitle the appellee to claim the relief sought against the appellant, Jackson Yates.

This being our view, it follows that the decree appealed from is erroneous and should be reversed, and that the bill should have been dismissed ; and a decree will accordingly be entered reversing the decree of the court below and remanding the cause with directions that the bill be dismissed.