H. S. SANFORD, APPELLANT, VS. A. ST.-CLAIR ABRAMS, APPELLEE.

1. In an action of assumpsit for an unliquidated demand where the pleas are payment and accord and satisfaction, it is incumbent upon the plaintiff to prove his damages; and the defendant has the right to cross examine plaintiff's witnesses, and to introduce evidence to mitigate the amount of damages claimed by the plaintiff.

2. Where the facts in reference to the arrangement or accord between the parties is ascertained, their effect is purely a question of law for the court, and are not to be submitted to the jury.

3. The plea of accord and satisfaction to be effective must be supported by a new contract expressed or implied between the same parties to the original agreement, and the last contract must be executed to have the effect of satisfaction.

4. A fair compromise and settlement of unliquidated demands open to dispute are favored by the courts, and a less amount than is claimed may be paid and accepted in satisfaction of the unliquidated demand or claim.

5. Where A. claimed of S. an unliquidated demand for his personal services to S. as the agent of S., and offered to compromise and settle the same, and threatened S., who was in Europe, with a suit unless there was a speedy compromise and settlement for his claim, S. having employed F. and D. as his attorneys in the matters in dispute, and F., as the friend of both parties, having offered his services to bring about a compromise and settlement of the matters in dispute between A. and S., a negotiation looking to a compromise and settlement was opened by A. with F. and F. and D., by A. proposing as a compromise and settlement to F. and D., that S. should pay A. two thousand dollars in cash, receipt a lumber bill and make him a deed for a lot of land he was due a balance on. This proposition was telegraphed to S. by F. and D., and S. replied through F. and D., and they through F. to A: "S. agreed to two thousand dollars. Cabled for amount of lot and lumber bill. We answered, and had no reply. How late can we wait to have answer." To this A. replied to F., "deposit two thousand dollars with Ambler by Friday, and all right." To which F. replied : "Have telegraphed Daniel your dispatch." F. and D. deposited the two thousand

dollars with Ambler as A. requested. A few days after the money was so deposited, A. drew it out and subsequently by letter to F. and D. thanked them for the settlement. Nothing more was heard from A. until eight months thereafter as to his claim or demand, when F. informed A. that he considered the two thousand dollars so paid him as full satisfaction of his claim; A. replied, "that he expected more," and never has offered to refund or pay back to S. the two thousand dollars. At the time of this transaction A. was greatly pressed for money:

*Held,* that A. was estopped to sue upon his original demand or claim against S.; that the contract was complete and sustained the plea of accord and satisfaction interposed ·by S. in a suit by A. upon his original claim or demand.

Appeal from the Circuit Court for Orange county.

The opinion in this case was filed at the January term, 1887, but a petition for a rehearing was filed at the same term, which was held under advisement, and was denied at the January term, 1888.

Judge McClellan, of the First Circuit, sat in the place of Justice Raney, who was disqualified :

This suit was commenced January 6th, A. D. 1883, by the appellee, against appellant, in assumpsit. The declaration was filed February 5, A. D. 1883. It contains two special counts and the usual common counts. The first count alleges that on January 1st, 1881, that the plaintiff was employed by the defendant as the agent of defendant, to make a contract for defendant of the purchase of a large amount of lands from the Trustees of the Internal Improvement Fund of the State of Florida. That the defendant fixed the price to be paid for the land at fifty cents per acre, and in bodies of not less than six hundred and forty acres. That plaintiff, under his employment, did contract with said trustees for the purchase of a large amount of land for defendant at the price of forty cents per acre, to be selected in

bodies of six hundred and forty acres each. That said contract was of great advantage to the defendant, and which was made by plaintiff at great expense and labor, and for which the defendant never paid plaintiff, to the damage of the plaintiff of twenty thousand dollars.

The second count, that defendant, by his negligence, failed to comply with his part of the contract of the purchase of said land, and lost his right to the same when defendant came to plaintiff and employed him to renew said contract, which the plaintiff did at great expense, and with much labor, for which the defendant has never paid him. Then follows the common counts.

It does not appear that when defendant employed the plaintiff, there was any stipulation as to the compensation plaintiff should receive from the defendant for acting as defendant's agent in making these contracts. It is nowhere shown in the pleading nor is there any evidence offered to that effect. The plaintiff, therefore, under the employment, was entitled to such reasonable compensation as his labor was worth.

The defendant appeared and pleaded to the declaration by filing, first, the plea of the general issue; second, payment; third, accord and satisfaction. The plaintiff moved the court to order defendant to elect between his plea of the general issue and his second and third plea filed of accord and satisfaction, and, the election being made, that the other pleas be struck out, which motion was granted. Under this ruling the defendant withdrew his first and third pleas.

The defendant then offered, and presented for filing, a number of pleas, among them a plea of accord and satisfaction, and after setting up the facts of the transaction by the plaintiff and defendant in regard to the employment of the plaintiff by defendant, the nature of the labor performed by plaintiff for defendant and the subsequent act of the parties

·in regard to the whole matter of controversy between them, the court denied the application of defendant. The defend-ant then moved the court to reinstate his third plea. The plea of the general issue being stricken out the cause was ·submitted to the jury upon the pleas of payment and accord and satisfaction.

The evidence in the case is voluminous on the part of the plaintiff. It shows that the plaintiff made journeys to Talla-hassee and other points connected with his employment by defendant, that he expended much time and money in the interest of his principal and for the purpose of making the contract he was employed to procure. None of the witnesses examined fixed, with any degree of certainty (except the plaintiff,) what would have been a reasonable compensation for the services of the plaintiff in and about the making of the contract for the purchase of the lands from the Trustees of the Internal Improvement Fund of the State for defend-ant. As to the money expended by plaintiff, it appears from his evidence that it reached near the sum of eighteen hun-dred dollars.

In the latter part of 1881 the plaintiff threatened suit against the defendant to recover compensation for his ser-vices rendered the defendant as his agent in making a pur-chase of the land from the Internal Improvement Board of Florida. The defendant being absent in Europe, employed the law firm of Fleming & Daniel, of Jacksonville, to repre-sent him, and the Hon. E. K. Foster interviewed, as the friend of both ·parties to see if the matter could not be settled, and from thence forward to April 13th 1882,Messrs. Fleming & Daniel and E. K. Foster co-operated to bring about a settlement between the parties. Various sums were named by plaintiff as a basis of compromise, $6,000 and $4,000, which were declined by defendant's attorney and friend. Finally in the latter part of March, 1882, the

plaintiff submitted a proposition of compromise, to-wit: "Defendant to pay $2,000 cash, receipt a lumber bill and a bill for balance due by plaintiff to defendant on the purchase of a lot in Sanford." This proposition was to be accepted or rejected in time to allow plaintiff, if rejected, to sue to May rules, 1882. On March 31st., 1882, plaintiff wrote Col. Daniel, "if Mr. Sanford agrees to my last proposition, please deposit the money in Ambler, Marvin & Stockton's bank to the credit of my firm."

On April 8th, 1882, the plaintiff wrote Col. J. J. Daniel, of the firm of Fleming & Daniel, the following letter:

[Ex. F.] TAVARES, ORANGE CO., FLA., April 8th, 1882.

*Col. J. J. Daniel:*

MY DEAR SIR. On Monday last Mr. Ingraham informed me he had received a telegram from General Sanford which left the acceptance or rejection of my proposition of settlement to you and E. K. Foster, and supposing from what both of you had said to me that the proposition would be agreeable to you, I acted as if the matter was settled. Under date of the sixth, Ambler, Marvin & Stockton wrote me that $2,000 had not been placed to my credit. As a consequence, I am "all at sea" in the matter. If I cannot have a settlement I must withdraw the proposition, as I must make arrangements elsewhere. As I mentioned to you, my proposition was $2,000 in cash and a receipt for a lumber bill I have in Sanford, and a deed for a lot purchased by me and against which I have an off-set of nearly two hundred dollars. Will you please to write me at this place (Tavares) and tell me how the matter stands. I am very much disappointed, as I have been pressed for money to carry on my enterprises, and had made the offer of settle-

ment solely because of that fact. Trusting you are well, I am, my dear Colonel, yours very truly,

ALEX. ST. CLAIR ABRAMS.

Then follows the following telegrams and letters between the plaintiff and E. K. Foster and Col. J. J. Daniel touching the compromise and settlement of the subject matter of the suit between the plaintiff and defendant :

[Ex. E.]                    TAVARES, ORANGE CO., FLA.,
                                    March 31st, 1882.

*Col. J. J. Daniel :*

DEAR SIR : If Mr. Sanford agrees to my last proposition please deposit the money in Ambler, Marvin & Stockton's bank to the credit of my firm. I ask this, presuming that the money will be paid through you.

In haste, yours truly,

ALEX. ST. CLAIR ABRAMS.

[Ex. A.]                    PENDRYVILLE, FLA., 9, 1882.

*To E. K. Foster, Quincy, Fla. :*

Has Sanford accepted my proposition ? Answer at once.

ALEX. ST. CLAIR ABRAMS.

[Ex. J.]                    JACKSONVILLE, FLA., April 11, 1882.

*Hon. A. St. Clair Abrams :*

MY DEAR SIR : Your letter April 8 was received this morning. We telegraphed Gen'l Sanford your proposition, and he has answered authorizing us to settle for two thousand dollars, and asked for information as to lot and lumber. We have written Mr. Ingraham to wire Sanford the amount due by you on lot and lumber. Give us a little more time. We think we can arrange the matter satisfactorily.

Very truly yours,

FLEMING & DANIEL.

[Ex. B.]                    TALLAHASSEE, FLA., April 11, 1882.

*To A. St. Clair Abrams, Lake Eustis, Orange Co., Fla. :*

Sanford agreed to two thousand dollars. Cabled for amount

H. S. Sanford v. A. St.-Clair Abrams—Statement of Case.

of lot and lumber bill.   We answered.   Have had no reply.
How late can we have to wait answer.   I was absent when
you dispatched yesterday.                         E. K. FOSTER.

[Ex. C.]                         PENDRYVILLE, FLA., 13.

*E. K. Foster, Tallahassee :*

   Deposit two thousand with Ambler by Friday, and all
right.                         · ALEX. ST. CLAIR ABRAMS.

[Ex. D.]                         TALLAHASSEE, 14, 1882.

*To A. St. Clair Abrams, Lake Eustis, Fla. :*

   Telegram received by mail.   Wire down.   Have tele-
graphed Daniel your dispatch..         E. K. FOSTER.

[Ex. G.]         TAVARES,     ORANGE Co., FLA., }
   (Monday)                 April 17, 1882.   }

*Messrs. Fleming & Daniel, Jacksonville :*

   GENTLEMEN :   Having on Saturday received from Mr. E.
K. Foster, a telegram stating that Mr. Sanford had declined
to accept  my proposition, I will commence suit at once
and file præcipe to-day.   If you will accept service, I will
not apply for attachment.   But, if not, I will, and then pro-
ceed to file bill in equity to subject the Belle Aire grove
and other property to the attachment.   This I desire to
avoid, hence my hope that you will accept service.

                              Yours truly,
                         ALEX. ST. CLAIR ABRAMS.

                    TAVARES, ORANGE CO., FLA., }
[Ex. H.]                 April 19, 1882.   }

*Messrs. Fleming & Daniel :*

   GENTS :   When I wrote you from Orlando on Monday,.
I was not aware that the Sanford matter had been settled.
I arrived here this morning and found telegram from Am-
bler, announcing that the $2,000 had been paid into his

bank. Of course that dispenses with my last letter to you. Accept my thanks for your kindness in this business.

＊        ＊        ＊        ＊        ＊        ＊        ＊        ＊

I am yours truly,
ALEX. ST. CLAIR ABRAMS.

In Dec. 1882, the plaintiff informed Mr. E. K. Foster that he did not consider the matter settled. Mr. Foster told plaintiff he did. No offer was ever made by the plaintiff to refund the $2,000 he drew out of Ambler, Marvin & Stockton's bank, that had been deposited there by Col. J. J. Daniel, as attorney for defendant, and on January 6, 1883, the plaintiff sued defendant.

The plaintiff asked for and the court gave the following charges: 1st. "That under the pleadings in the case the issue is one of payment and accord and satisfaction, and that the jury cannot take into consideration any question involving issues not pertinent to that presented by the pleadings." 2d. That the fact that defendant had, or claimed to have, another contract with the Board of Trustees of the Internal Improvement Fund at the time he employed the plaintiff, is not an issue in this case, and has no bearing upon it, and that even if he had, if it be shown by the testimony that the defendant subsequently employed plaintiff to make a new contract, and afterwards, in person, or by his authorized attorney, accepted this new contract, the jury must regard the original contract as being foreign to the issue, and cannot consider it as a part of the case. 3d. That the issue being payment and accord and satisfaction, such issue is an admission of the services, and the burden of proof is upon the defendant. That payment and accord and satisfaction imply a contract or agreement, in which both assent and consent to the terms thereof, and one tenders and the other receives the money, or other valuable consideration, in final settlement and discharge of the claim, each party being of

the same mind and understanding in the transaction. 4th. The plaintiff cannot be bound for any misunderstanding of the meaning of a telegram sent by him to a third person, and by that third person transmitted to defendant's attorney; that if they believe from the evidence that the telegram sent by plaintiff to E. K. Foster was in reply to one sent to him by E. K. Foster, asking for additional time for defendant to accept plaintiff's proposition of compromise, and was not intended as a new proposition to, or any acceptance of $2,000 alone in settlement of his claim, their proof of deposit of $2,000 alone would not be sufficient evidence of payment and satisfaction of the claim. 5th. If the jury believed that defendant deposited the money in bank, supposing that it was in full payment and satisfaction of the claim, and the plaintiff received it, supposing that it was but a part payment of his claim, and that he was to receive something more, then there was no payment and accord and satisfaction, because there was no unity of mind between the parties, and this unity of mind is absolutely essential to prior payment and accord and satisfaction. 6th. If the jury believe that the plaintiff tendered certain propositions to defendant, by way of compromise, in payment and satisfaction of his claim, it is necessary for defendant to prove that he performed all the conditions of the compromise, and within the specified time, or plaintiff will not be barred of suing on his original claim; that payment of part of the terms of the proposed compromise is not sufficient. Failure to comply with any part releases the plaintiff from any obligation arising under his proposition, and enables him to sue for the full amount originally claimed, and to recover it. These charges were embodied in a motion for a new trial by defendant, and are assigned for error. The new trial was refused.

*J. F. Welborne* and *Fleming & Daniel*, for Appellant.

*Alex. St.-Clair Abrams in pro per.*

JUDGE McCLELLAN delivered the opinion of the court:

This is an action of assumpsit, instituted by the plaintiff to recover of the defendant a reasonable compensation for services as agent of defendant in making a contract for defendant for the purchase of land from the Internal Improvement Board of the State of Florida. There was no special contract as to the compensation plaintiff was to receive. The amount of compensation was an unliquidated demand. It was tried by a jury, with pleas of payment and accord and satisfaction interposed by the defendant. We do not propose to consider all of the exceptions taken by defendant at the trial or to consider all of the errors assigned by the appellant.

The second error assigned is that the court erred in giving the charges asked by the plaintiff's counsel, numbered from one to six inclusive. The first of these charges asked and given was: "That under the pleadings in the case the issue is one of payment and accord and satisfaction, and that the jury cannot take into consideration any question involving issues not pertinent to that presented by the pleadings." This charge is too restricted in its character. It assumed that the only issues presented in the case were that of payment and that of accord and satisfaction, and was well calculated to mislead the jury. While the plea of the general issue had been struck out by order of the court, no judgment by default had been entered upon the several counts in the plaintiff's declaration. The effect of the pleadings, as they stood upon the trial then being had, was to admit the contract of employment, as alleged by the plaintiff in his declaration, by the defendant and for the purposes so

alleged in the plaintiff's declaration.   Yet it remained in-
cumbent upon the plaintiff to prove what his services were
reasonably worth to the defendant under the contract as al-
leged in the declaration.   Upon the question as to what the
plaintiff's services were reasonably worth to the defendant,
the defendant had a right to cross-examine plaintiff's wit-
nesses and to introduce evidence in mitigation of damages
as claimed by the plaintiff.   Watson vs. Seat & Crawford,
8 Fla., 446.

This charge, in the opinion of this court, withdrew from
the jury, or had a tendency to withdraw from the jury,
the evidence before them, both on the part of the
plaintiff and defendant, bearing upon the measure of the
value of plaintiff's services to the defendant under the con-
tract, as alleged in plaintiff's declaration.   It was the prov-
ince of the jury, in making up their verdict, to consider all
of the evidence before them, pro and con, as to the value of
plaintiff's services to the defendant.   The second instruc-
tion asked by the plaintiff and granted by the court is amen-
able to the same objection as that of the first.   The third,
fourth, fifth and sixth instructions asked by the plaintiff and
given by the court will be considered together, as they all
bear upon the same subject matter; the plea of accord and
satisfaction, as pleaded by the defendant, and in order to de-
termine whether the charges as given by the court were
proper or improper, it is necessary to examine the evidence,
as elicited before the jury, both for the plaintiff and the de-
fendant.

Every plea of accord and satisfaction must be supported
by a contract expressed or implied to be effective.

We do not for a moment consider this case as resting upon
the doctrine established in the English case of Cumber vs.
Wane, or as falling under the many qualifications of the
doctrine of that case that have been made both in England

and America by adjudication. In Cumber vs. Wane the doctrine is established that a partial payment in money by the debtor to his creditor upon a debt, the amount of which is fixed beyond controversy, or where the amount of the debt may be ascertained by mere mathematical calculation, although paid and received in full, that such payment is no satisfaction of the whole debt, and suit may be maintained for the balance of the original debt.

The broad distinction of this case now before this court from Cumber vs. Wane is that no amount had been fixed, but the claim of the plaintiff stood as an unliquidated claim or demand to be ascertained by evidence, and that could only be arrived at by evidence and not by mathematical calculation. That $2,000 was paid by the defendant to plaintiff before suit is not denied by the plaintiff. The evidence bearing upon the payment of the $2,000 by defendant to plaintiff is mostly in. writing, either by letter or by telegram, and their contents are not denied or questioned by either party to the transaction, but the disagreement grows out of the construction to be put upon the letters and telegrams that passed between the persons who were engaged in the negotiation of the settlement of the plaintiff's claim or demand against the defendant. Mr. Greenleaf, in his excellent Treatise on Evidence, vol. 2, m. p. 28, top page 25, says, " the facts in respect to the arrangement or accord between the parties being ascertained their effect is purely a question of law for the court and is not to be submitted to the jury." Applying this law to the charges of the court, we think the court erred in all of the charges asked by plaintiff and given by the court upon this subject.

The importance of this case to both parties requires that this court should pass upon the written evidence in this case bearing upon the negotiation for a settlement of the controversy or claim of plaintiff against defendant. This case is

distinguished from most cases of a like character that comes before the court. In most cases the proposition to compromise, settle or accord and satisfy a debt, demand or claim comes from the debtor to the creditor. In this case the proposition in the first instance comes from the creditor, and we think has a bearing upon what took place between the parties to the negotiation for a settlement. The pecuniary wants of the plaintiff at the time, and his silence and inaction after the receipt of the $2,000, from April 17, 1882, to December, 1882, full eight months, must be considered in connection with the act of the plaintiff at the time of the receipt of the $2,000, to determine his intention and purpose at the time of the receipt thereof. The intention of the parties, as in all contracts, is to govern in forming a conclusion as to what was the effect of the negotiation. This intention must be arrived at by the language used in the negotiation, as evidenced by letters and telegrams, and as read by the surrounding circumstances immediately before and up to the date of the payment and receipt of the $2,000 that is claimed by the defendant to have been a full accord and satisfaction of plaintiff's demand, sued for in this action. Was the $2,000 in cash deposited by the defendant's agent in Ambler, Marvin & Stockton's bank and received by the plaintiff received in satisfaction of the claim or demand sued for in this action? The evidence in the case shows that previous to April 8th, 1882, the plaintiff had proposed to Messrs. Daniel and Foster, who were representing the defendant, Sanford, that the plaintiff would accept from the defendant $2,000 and a receipt for a lumber bill Sanford held against him and a deed for a lot purchased of Sanford upon which there was a balance due from plaintiff. On the 8th of April, 1882, the plaintiff wrote Colonel J. J. Daniel repeating this proposition. On the 9th of April, 1882, the

plaintiff telegraphed E. K. Foster, to Quincy, Fla. : "Has Sanford accepted my proposition ? Answer at once." On April 11th, 1882, Fleming & Daniel wrote the plaintiff that his letter of April 8th was received this morning. "We telegraphed General Sanford your proposition, and he has answered authorizing us to settle for $2,000, and asked for information as to lot and lumber. We have written Mr. Ingraham to wire Sanford the amount due by you on lot and lumber. Give us a little more time. We think we can arrange the matter satisfactorily." On April 11th, 1882, E. K. Foster, the intermediator between the parties, telegraphed the plaintiff, to Lake Eustis, Florida : " Sanford agreed to $2,000. Cabled for amount of lot and lumber bill. We answered, have had no reply. How late can we have to wait answer? I was absent when you dispatched yesterday." On April 13th the plaintiff telegraphed E. K. Foster, Tallahassee, from Pendryville, Florida : " Deposit $2,000 with Ambler by Friday, and all right." On April 14th, 1882, E. K. Foster telegraphed the plaintiff from Tallahassee, Florida, to Lake Eustis, Florida : " Telegram received by mail; wire down ; have telegraphed Daniel your dispatch." On April 17th, 1882, the plaintiff wrote Messrs. Fleming & Daniel that he had received on Saturday a telegram from E. K. Foster stating that Mr. Sanford had declined to accept his proposition, and that he would commence suit at once. On April 19th, 1882, the plaintiff wrote Messrs. Fleming & Daniel : " Tavares, Florida, April 19th, 1882.— Messrs. Fleming & Daniel, Gents: When I wrote you from Orlando on Monday I was not aware that the Sanford matter had been *settled*. I arrived here this morning and found telegram from Ambler announcing that the $2,000 had been paid into his bank. Of course that dispenses with my last letter to you. Accept my thanks for your kindness in this business." On the 31st of March, 1882, the plaintiff wrote

Colonel Daniel : " If Mr. Sanford agrees to my last proposition please deposit the money in Ambler, Marvin & Stockton's bank to the credit of my firm." The money, $2,000, was deposited in Ambler, Marvin & Stockton's bank, as requested by plaintiff's dispatch of April 13th, 1882, and was drawn out by the plaintiff on or before April 19th, 1882, and has never been returned or offered. It is contended by the counsel for the plaintiff, the appellee in this court, that the receipt and acceptance of the $2,000 deposited in Ambler's bank by the defendant's attorney was not received by him in satisfaction of his demand sued for; but he received it, expecting more, to wit: the lumber account and the balance due on the lot purchased from the appellant. If this position was tenable, then the plaintiff's right to sue would rest upon a new contract, and his remedy would be on that and not upon the original cause of action.

The negotiation for a settlement was carried on in the utmost frankness by both parties, the plaintiff proposing a settlement on the basis of $2,000, receipt of a lumber account and balance due on lot, the whole amounting to, as appears from the evidence, $2,600, or $2,700. To this proposition the plaintiff is informed " that Sanford agrees to $2,000." Called for amount of lot and lumber bill. He is further informed that Sanford has been answered, but have had no reply, and in the form of an interrogatory the plaintiff is asked : " How late can we have to wait answer ?" To this the plaintiff replies : " Deposit $2,000 with Ambler by Friday and all right." On April 19th, 1882, he writes Messrs. Fleming & Daniel that when he wrote them from Orlando on Monday he was not aware that the Sanford matter had been " settled." What did plaintiff mean when he said deposit two thousand dollars in Ambler's bank, " and all right?" Did he mean that he considered the payment of the $2,000 offered by Sanford as a settlement of

his claim against Sanford? If there was wanting anything to make it more clear what he meant, it is found in the plaintiff's letter of April 19, 1882, where he says he was not aware on the 17th of April, when he wrote Fleming & Daniel, "that the Sanford matter had been *settled*." No allusion is made in the slightest degree to any expectation of the payment of anything more. His need of money to carry on his enterprises; his long silence after the receipt of the $2,000, all go to bar his right to exact of the defendant anything more. Besides, the whole purpose and object of the parties to this negotiation was to settle the whole claim by compromise, and not to procure or to make a payment upon the plaintiff's demand for his services to defendant.

Mr. Greenleaf, in his work on Evidence, 2d vol., p. 537, says: "If the claim be not liquidated, but open to a dispute, a receipt in full could be pleaded as an accord and satisfaction, on the ground that a fair compromise and settlement of the claim should be upheld," and refers by note to a number of English and American cases to support this position. We have been unable to verify the cases referred to, except a few of them, which we think support the text. In the case of Stockton vs. Frye, 4 Gill, 408, it is laid down that a party aggrieved may determine the sufficiency or insufficiency of the satisfaction made and accepted by him, and in actions for general and unliquidated damages the payment and acceptance of a sum of money as a satisfaction, is a good bar. The case of Palmerton vs. Huxford, 4 Denio, 166, is to the same effect. The case of McDaniel vs. Lapham, 21 Vermont, 222, we think is very much in point. It is there determined that when a party makes an offer of a certain sum to settle a claim, when the sum in controversy is open and unliquidated, and attaches to his offer the condition that the same, if taken at all, must be received in full, or in satisfaction of the claim in dispute, and the other

party receives the money, he takes it subject to the conditions attached to it, and it will operate as an accord and satisfaction, even though the party at the time of receiving the money declares that he will not receive it in that manner, but only in part satisfaction of his debt as far as it will extend.    In the case before the court, the parties were negotiating for a compromise and settlement in full of plaintiff's unliquidated claim or demand against defendant. The defendant offered $2,000.    This was received by the plaintiff, he saying deposit it in Ambler's bank, and all right.    The receipt and acceptance of the $2,000 by plaintiff is only referable to the object and purpose of the negotiation that was to compromise and settle the plaintiff's claim against defendant in full.    The negotiation was not for a part payment of the claim, but for full settlement.

The court should, upon the evidence before it, have determined whether what passed between the parties was an accord and satisfaction, and not, by the charges given, have submitted to the jury as a fact to be found from the evidence whether there was an accord and satisfaction.    There being no dispute as to the facts before the court on this subject, it was a question of law for the court to determine, and not of fact for the jury, and for these reasons there was error in the charges asked and given by the court.

And for the same reason the court should have granted a new trial.

We do not consider it necessary to determine the other errors assigned growing out of the pleadings.

Judgment reversed and new trial granted.