BRYAN, KEEFE & COMPANY, A CORPORATION, *Plaintiff in
Error*, v. FREDRICK H. HOWELL, JAMES H. POST, AND
THOMAS A. HOWELL, CO-PARTNERS UNDER THE NAME OF
B. H. HOWELL SON & COMPANY, *Defendants in Error*.

Division A.

Opinion Filed July 20, 1926.

1. Payment of part of an undisputed debt does not discharge
   the whole in the absence of an agreement by both parties to
   that effect.

2. Where the claim is unliquidated or disputed, and the debtor
   sends the creditor a check with a letter stating that the check

is tendered in full satisfaction, or upon condition as to the method of satisfaction, and it is made plain that the creditor, if unwilling to accept the check upon the conditions named, must return it, the acceptance and cashing of the check necessarily involves an acceptance of the conditions upon which it was tendered.

3. The settlement of a disputed claim may form a valid consideration for a new or substituted contract between the parties.

4. In order for assent to a new contract to be implied from the mere acceptance and cashing of a check, the letters or other documents accompanying same should make it plain that such retention and use of the check could only rightfully be exercised by acceptance of the terms and conditions upon which it is issued, and such terms and conditions should also be expressed with reasonable certainty and clearness. And in order to maintain an action upon such new contract, the plaintiff must make it appear by his declaration that he has performed all things required of him, if any, by such new contract, which would entitle him to demand performance on the part of the defendant.

A Writ of Error to the Circuit Court for Hillsborough County; F. M. Robles, Judge.

Affirmed.

*Wm. Taliaferro* and *James F. Glen,* for Plaintiff in Error.

*T. M. Shackleford, Jr.,* and *Shackleford & Shackelford,* for Defendants in Error.

### STATEMENT.

The declaration in this case reads as follows:

"Now comes the plaintiff in the above stated cause, by

leave of the Court first had and obtained, and files this its amended declaration.

"The plaintiff, Bryan, Keefe & Company, a corporation, by its attorneys, sues the defendants, Frederick H. Howell, James H. Post and Thomas A. Howell, co-partners under the firm name of B. H. Howell Son & Company, for that in the latter part of 1920 and early part of 1921 a controversy existed between the plaintiff and the defendant as to the liability of the plaintiff on account of 500 bags of sugar delivered by the defendants to the plaintiff at Tampa in the month of August, 1920, and, to-wit, on February 8th, 1921, the plaintiff and defendants entered into a contract for the settlement of the said controversy, evidenced by the terms of a letter of that date from the plaintiff to the defendants, and certain correspondence enclosed therewith, including a cheque of the plaintiff to the defendant for the sum of $10,489.02, which accompanied the said letter, the said correspondence being as follows, to-wit:

. February 8th, 1921.

Messrs. B. H. Howell Son & Co.,
129 Front St., New York, N. Y.

Gentlemen:

We are just advised by Messrs. Harmon & Hulsey that you have not received our check sent you on January 31st.

Upon looking through our files, we find our letter was addressed to you at Philadelphia and was evidently mailed to the same point.

We are enclosing you herewith a duplicate of the check, also duplicate copies of all papers sent you at that time. We know this sounds like a put-up job in sending this letter to Philadelphia, but, somehow or other we had Phila-

delphia on our minds, which is the reason the check was sent to that point.

Yours very truly,<br>SNOW-BRYAN COMPANY,

EJK/J<br>Incls.

Messrs. B. H. Howell Sons & Co.,<br>Philadelphia, Penna.                    'Jan. 31st, 1921.'

Gentlemen:

As per exchange of wires between Messrs. Harmon & Hulsey and T. S. Southgate & Co., we enclose herewith our; check for $10,489.02 in settlement of your invoice of August 23rd. This amount is arrived at by deducting the cash discount and a further allowance of $500.00—authorized by T. S. Southgate & Co. on account of the expense you would be put to for attorney fees, if this claim was placed in the hands of your lawyers for collection.

In making this settlement we call your attention to copy of enclosed letter dated December 11, 1920, addressed to your brokers, Messrs. Harmon & Hulsey. We also call your attention to enclosed copy of letter addressed by Messrs. T. S. Southgate & Co. to the C. B. Witt Co., of Tampa, dated November 18, 1920.

This check is tendered you with the reservations as outlined in our letter to Messrs. Harmon & Hulsey of December 11, 1920, as per copy enclosed.

We are inclined to think that this permanently closes the entire matter; but see no reason why you should be unwilling to accept the settlement as tendered; and hope under the circumstances you will do so.

Yours very truly,<br>SNOW-BRYAN COMPANY.

'Dec. 11th, 1920.

Messrs. Harmon & Hulsey,
601 Ashley Street,
Tampa, Florida.

Re: B. H. Howell, Son & Co.'s invoice Aug. 23rd, 1920, 500 sacks sugar $22,393 per 100 lbs. $11,213.29.

Gentlemen:

Considerable correspondence has passed in this matter as well as numerous interviews with you. In order to place the matter in definite form, we make the following proposition:

On receipt of assurances from B. H. Howell, Son & Company, or, you, or others acting as their agents, that in the event they make settlement with any concern in Tampa holding sugars that are in dispute, on any other basis than payment of full invoice price, they will extend to us exactly the same concessions on the above invoice.

Further, we understand the C. B. Witt Company have been relieved of certain sugars; any settlement made with this concern in this case to be extended to us. Further, that unless action is taken in the C. B. Witt Company case within a reasonable time, it is to be considered by all concerned that a settlement has been made with this concern, and that an adjustment will be then made with us on the same basis.

On receipt of this assurance we will give you our check for $10,989.02, certified, if you wish, with the further understanding that Messrs. .B. H. Howell, Son & Company will refund us such amount as may be necessary, if any, in the light of the above understanding.

We have always had your assurances that we would receive exactly the same treatment as was accorded others; and while we are entirely satisfied to make settlement with no other assurance, still we do not think it fair to you for

us to ask you to assume this entire responsibility and we are therefore writing this letter to give you an opportunity of securing the same expression from your principals.

We are ready to make settlement immediately on receipt of your reply, and if you do not care to take the matter up with the refiners and will assume this responsibility yourself, it will be entirely satisfactory to us, but, as this is a matter of some small importance we think best to call your particular attention to the fact that this is our understanding of this matter.

Yours very truly,

SNOW-BRYAN CO.

'Nov. 18th, 1920.

C. B. Witt & Co.,

Tampa, Fla.

Gentlemen:

We have had many exchanges back and forth with B. H. Howell, Son & Co., with respect to your proposition contained in your recent letter, viz: to take 271 sacks sugar @ 22c, and return to our stock 379 bags, on which the Refinery is to suffer the loss. We have persuaded Howell to allow us to accept this proposition without prejudice and without its having the slightest bearing upon what is finally decided upon with respect to the balance of the various contracts that are unsettled in Tampa.

In the interest, therefore, of clarification and of making a start toward cleaning this matter up, we are authorizing billing to you as above stated, and will provide for the retention of the 379 bags and its disposition in some other form, as above stated.

Very truly yours,

T. S. SOUTHGATE & CO.

P. S.—The bookkeeping way of handling the above in

our judgment would be as follows. Howell billed you under date of Aug. 23rd 650 bags; we will now ask them to issue you credit memorandum for 379 bags, which you can attach to your invoice for the 650 bags and remit for the balance—271 bags. Please do this, therefore, at once.

"That Harmon and Hulsey and T. S. Southgate and Company mentioned in the said correspondence were and are agents and representatives of the defendants; that the defendants received and cashed the said cheque for $10,-489.02, and never returned or offered to return the same, and thereby assented to the terms of the plaintiff as set forth in the said correspondence; that the defendant also had a controversy with C. B. Witt Company, a corporation, also doing business in the City of Tampa, as to its liability on account of certain sugar delivered by the defendants to the said C. B. Witt Company at Tampa in the month of August, 1920; that the price of both sugars at the time of deliveries to the plaintiff and C. B. Witt Company, respectively, was 22 cents per pound; that both the plaintiff and C. B. Witt Company had objected to receiving and paying for the said sugar at the said price and there was in existence at the time of the respective deliveries thereof by the defendants to the plaintiff and C. B. Witt Company no contract requiring or binding either to accept or pay for the said sugar; that the defendants did make a settlement with the C. B. Witt Company whereby they accepted the return from the said C. B. Witt Company of 379 bags of the said sugar, which at the time of said settlement had declined in price to nine cents per pound, and has since remained at less than that price, and relieved the said C. B. Witt Company of any obligation on account of the said sugar so returned, whereby the plaintiff is entitled to receive of the defendants 13 cents per pound on 500 bags of sugar,

containing upwards of 50,000 pounds for which it paid the defendants at the rate of 22. cents per pound, included in the cheque for $10,489.02, sent with the plaintiff's letter of January 31st to the defendants and received and cashed by the defendants, less the sum of $500.00 and the cash discount amounting to two per cent mentioned in the said letter; that the name of the plaintiff has been changed since the correspondence to Bryan, Keefe & Company.

"Wherefore plaintiff sues the defendant and claims $10,000.00 damages."

To this declaration the defendant interposed a demurrer testing its sufficiency in matters of substance on various grounds.

BROWN, C. J. (after stating the case).—In their briefs, counsel for defendants in error criticized the declaration for pleading evidentiary facts instead of ultimate facts, and for attempting to set out the cause of action at length instead of merely using the usual statutory form of common count for money had and received. These objections to the *form* of the declaration, even if they could have been successfully made by motion for compulsory amendment under the statute (which it is not necesary for us to decide), are not raised by the demurrer going to the *substance* of the declaration. This is substantially conceded by counsel for both sides, who, in their briefs, concur in the statement that this case presents the single question as to whether or not the declaration states a cause of action.

If the claim of Howell & Co. against plaintiff in error had been undisputed, they could have cashed the check, applying the proceeds as far as they went in reduction of the amount due, and still retained the legal right to recover the balance, if any, of the debt. And this effect would have followed even though the check had been enclosed in

a letter stating that it was tendered in full satisfaction of the debt, else to be returned, or if words of similar import had been written on the check. Payment of part of an undisputed debt does not discharge the whole in the absence of an agreement by both parties to that effect, and such agreement will not be implied. Jordy v. Maxwell, 62 Fla. 236, 56 So. 946; L. R. A. 1917 A, 719; 3 Williston on Contracts, sections 1852-55. But such is not the case as to unliquidated and disputed claims, as is well shown by section 1854 of 3rd Williston, which reads as follows; "It seems obvious that nothing can operate as a satisfaction, without the mutual assent of debtor and creditor; but here as always in the formation of contracts this does not necessarily involve mental assent, as is shown by one commonly recurring state of facts. The case is this: A debtor sends to a creditor whose claim is unliquidated or in good faith disputed a check with a letter stating that the check is sent in full satisfaction, and that the creditor if unwilling to accept it as such must return it; or it is stated on the check itself that it is full satisfaction. The creditor takes the check, but immediately writes a letter stating that he refuses to accept the check as full satisfaction, but will apply it in reduction of the indebtedness. Upon these facts the English Court of Appeal first held that there was no satisfaction of the cause of action, but later practically overruled the decision. A few jurisdictions in the United States have sustained the creditor's contention that the question of his assent to the debtor's proposition is to be dealt with as one of fact. But the great weight of authority in the United States is to the contrary. It is said that the acceptance of the check necessarily involves an acceptance of the condition upon which it was tendered. A retention of a check, even for an unreasonable length of time has not always been given this effect, but as the credi-

tor has no more right to retain the check an unreasonable time than he has to cash it, unless he accepts it as full satisfaction, there seems no propriety in distinguishing the two situations."

The declaration plainly alleges that the claim on which the check was sent was a disputed one, and hence it follows that the acceptance of any intelligible conditions upon which it was tendered—at least in so far as such conditions operated to satisfy the original claim. But in order for the declaration here to be held to state a good cause of action to recover back a part of such original claim, it must go further and show that the acceptance and cashing of the check by Howell Company furnishes the consideration for and operated to form a new contract between the parties, by which the Howell Company agreed, not only to the discharge of the old claim, but also to abide by the conditions and terms upon which the check was tendered; in other words, plaintiff must have made it appear by its declaration that such acceptance of the check, in view of the conditions upon which it was tendered, effected a novation, by which a new or substituted contract was made, by which Howell thereby became bound to perform such terms or conditions; and that Howell had breached the new contract sued on.

Could the mere acceptance and cashing of the check by Howell, with knowledge of the conditions on which it was tendered, as shown by the letter accompanying it, have had this effect? We think this is possible, if the conditions were clearly expressed. It is undoubtedly true that to constitute a novation, the assent of all parties is necessary (3 Williston, section 1870), but such assent may be established by circumstances showing it as well as by expressed words. Id., section 1875; Malsby v. Gamble, 61 Fla. 310, 54 So. 766; Robinson v. Hyer, 35 Fla. 573-4, 17 So., 745. One who

is offered goods at more than their market value cannot take them and say, "I will take them and convert them, but not buy them," and thereby render himself liable for only their market value. And where money or a check, or other property, is offered in settlement of a disputed claim, the receiver has but two alternatives, either to reject, or accept in accordance with the condition. But the debtor must make it clear that the check which he sends is offered only on the conditions named. (3 Williston Contr., sec. 1856.) Of course, the payment, or the promise to pay, an undisputed debt previously existing—an offer to do no more than one is already legally bound to do—does not constitute a valid consideration, and hence no new contract could be founded upon it. 1 Williston Contr., sec. 130, 132. But not so as to an unliquidated or disputed claim. The settlement of a disputed claim may constitute a valid consideration for an accord and satisfaction, a compromise agreement or a new contract. I Williston, secs. 128, 134 Id. Vol. 3, Sec. 1873, and cases cited; McLane v. Piaggio, 24 Fla. 70, 3 So. 823; Sanford v. Abrams, 24 Fla. 181, 2 So. 373; 12 C. J. 324 and cases cited.

As intimated above, in order for assent to a new contract to be implied from the mere acceptance and cashing of the check the letters or other documents accompanying same should make it plain that such retention and use of the check could only rightfully be exercised upon acceptance of the conditions upon which it is tendered, otherwise the check to be returned to the sender, and the terms and conditions should also be expressed with reasonable certainty and clearness. It should also appear from the declaration that the plaintiff has performed all things required of him, if any, by the new contract, which would entitle him to demand performance on the part of the defendant.

The declaration does not make it very clearly to appear

that by plaintiff's proposal, defendants were to return the check if they did not assent to the terms.   It is true, the check was tendered upon the conditions named, but in view of plaintiff's retention of the entire 500 bags, for which it tendered the invoice price, and its reference to the Witt proposition, by which Witt was to pay the invoice price for all sugars retained, and the statement of plaintiff in closing the letter that, ''We are inclined to think this closes the entire matter; but see no reason why you should be unwilling to accept the settlement as tendered, and hope under the circumstances you will do so,'' no return of the check being requested if the terms were not agreed to, it is at least a debatable question whether the defendants were given clearly to understand that if they retained and cashed the check they thereby must necessarily assent to the conditions.   However, we are inclined to the opinion that at least a *prima facie* case is made out by the declaration in this regard, and we resolve this doubt in favor of the plaintiff.

The check in this case was tendered upon the following ''reservations'':   (1) That if the Howell Company should make settlement with any concern in Tampa holding sugars that are in dispute, on any other basis than payment of full invoice price, they should extend exactly the same concessions to the plaintiffs on the invoice which the check, with certain deductions, was sent to cover.   (2) That any settlement made with the C. B. Witt Company should be extended to plaintiffs, and adjustment made on same basis.   The letter stated in this connection, that ''we understand the C. B. Witt Company have been relieved of certain sugars.'' Then there is attached a copy of letter from the Howell Company's agents to C. B. Witt Co., containing the acceptance of the Witt Company's proposition to take 271 sacks of sugar at the invoice price of 22 cents, and return 379 bags.   The declaration goes on to allege that the sugars

were delivered to both plaintiff and the Witt Company at about the same time and at the same invoice price; that both had objected to paying for same at such price, there being no contract obligation on either to pay such price; that defendant did make settlement with the Witt Company, accepting the return of 379 bags, which at time of settlement had declined to 9 cents per lb., and has since remained at less than that price, and had relieved the Witt Company of any obligation on account of the sugar so returned,—''whereby plaintiff is entitled to receive of defendants 13 cents per pound on 500 bags of sugar, containing upwards of 50,000 pounds,'' etc.

It is very doubtful if the plaintiff puts itself in a position to ask the same treatment accorded Witt & Co. That company had proposed to the Howell Company to return considerably more than half of the sugar and pay the full invoice price for the balance, which proposition Howell accepted. The plaintiff does not claim to have made any such proposition, or requested Howell to settle with them on any such basis, though in their letter they had stipulated for ''exactly the same concessions.'' If the declaration had shown that after sending the check to Howell, they had returned a part of the 500 bags, retaining the balance at the invoice price, and demanded of Howell remittance to cover the amount returned to him, and he had refused or failed to remit, the plaintiff would have more nearly brought itself within the bounds of its own terms. It will be observed that Witt & Company made the proposition to return part of the shipment. Plaintiff has made no such proposition, nor is it alleged that it is in a position to do so. For aught that appears, it had long since disposed of all these sugars when suit was brought, or even when the check was mailed and proposal made. It will also be observed that, under the settlement between Howell and the Witt Company, *the Witt Company paid the full invoice price for*

*all the sugars retained by it.* The inference from the declaration is that the plaintiff did no more—in fact not quite so much, for it retained the full 500 bags, and paid the invoice price less 2% and $500.00—in other words, it appears from the plaintiff's pleadings that if they demand of defendants the same terms extended to Witt, they must either pay the full invoice price for all sugars they have retained—which they claim they have already done—or they must show that they proposed to defendants to return a portion of the sugars and demanded a refund *pro tanto,* at the invoice price, which demand defendants had failed or refused to comply with. An implied acceptance of the conditions on which the check was tendered, should not be adjudged against the defendants except upon the basis of the exact terms on which the tender was made. A proposal will be more strictly construed against him who makes and frames it, especially where an implied acceptance is relied on.

In view of the fact that Witt & Company paid 22c per pound for all sugars retained by them, can plaintiff say that defendants were put on notice by the terms proposed that if they retained the check they must let plaintiff pay only 9 cents per pound or the then market price, whatever it was, for the sugars retained by it and refund to plaintiff the difference between the market price and the invoice price? We think not. If that had been the intention of plaintiff when the letter embracing the proposal was written, why go through the idle ceremony of paying for the sugars at 22c per pound? Why did they not remit for the 500 sacks at the current market price and be done with it? For, it must be remembered that at the time it wrote the letter to defendant, plaintiff already knew the basis of settlement which had been agreed on between defendant and the Witt Company. This fact must be borne in mind when interpreting the meaning of plain-

tiff's letter to defendant and defendant's agents, which shows that the interpretation placed thereon in the declaration is erroneous.

For the reasons stated, we conclude that the declaration does not state a good and complete cause of action and that the court below was justified in sustaining the demurrer.

Affirmed.

ELLIS AND STRUM, J. J., concur.

WHITFIELD, P. J., AND TERRELL AND BUFORD, J. J., concur in the opinion.