UNITED STATES RUBBER PRODUCTS, INC., Plaintiff in Error, v. R. HAROLD CLARK, Doing Business as Mulberry Supply Company, Defendant in Error.

200 So. 385
Division B
Opinion Filed January 14, 1941
Rehearing Denied March 7, 1941

632

*Cody Fowler* and *William A. Gillen,* for Plaintiff in Error;
*Huffaker & Edwards* and *Holland, Bevis & Hughes,* for Defendant in Error.

BROWN, J.—This is a suit for damages for an alleged breach of warranty covering a hot-rock conveyor belt. A verdict and judgment were rendered below in favor of the plaintiff, who is defendant in error here, and the United States Rubber Company, the defendant below, brings this writ of error.

The plaintiff is a jobber of mining supplies in the phosphate section of Polk County, and has for some time been the representative of the defendant in this area. In early 1934, the American Agricultural Chemical Company, being desirous of purchasing a belt to convey hot phosphate rock

from its dryers to its storage bins, sent out quotation requests to various manufacturers, designated No. 1934, which were accompanied by a data sheet describing operating conditions at the plant and stating among other things, that the belt was to be used to convey hot, dry, pebble phosphate rock of the maximum temperature of about 250° F." Among others, one was sent to the Main Belting Company. From the replies received thereto, it appears that the American Agricultural Chemical Company concluded the belt manufactured by the Main Belting Company was the one best suited to their needs. However, in December, 1934, the said phosphate company sent another quotation request to the Main Belting Company, designated No. 1974, seeking further information regarding price and guarantee.

Defendant and the Main Belting Company had a working agreement in force at that time, whereby the defendant would accept any orders in the south for Main Belting Company belts and the latter company would fill them. Accordingly, the defendant advised the plaintiff, its agent, that he could accept and fill the order of the American Agricultural Chemical Company for the Main Belting Company's belt.

The American Agricultural Chemical Company in 1935 then entered with the plaintiff the following order for 735 feet of: "20" 7 Ply-Main Belting Co. ABC Hot Rock Conveyor Belting (5 plies canvas and 2 plies asbestos @ $2.55 per Lin. Foot, per Main Belting Co. quotation dated 12/11/34 our request No. 1974. Must be covered by the following guarantee:

" 'This belt is guaranteed to earn its cost against the average of the last six belts used on this installation. The average is $0.00466 per ton handled, as shown by performance record attached.' "

The plaintiff forwarded this order to the defendant, including the same warranty, and the defendant procured the belt from the Main Belting Company, and had it sent to the American Agricultural Chemical Company.

The belt was installed upon receipt by the American Agricultural Chemical Company, and the evidence discloses that after little more than two months service it was worn beyond further use. The plaintiff, upon the failure of the belt, notified the Main Belting Company, who furnished a second one without charge, which also lasted little more than two months. It is uncontradicted that the two belts together handled but a total of 108,102 tons of phosphate, and in order to have earned the cost price of the first belt they would have had to have handled a total of 402,200 tons. In other words, the two belts together earned only $503.75, based upon the average cost price of $0.00466 per ton, failing by $1,370.50 to earn the cost of the first belt.

After some negotiations between the parties, it appears the plaintiff paid to the American Agricultural Chemical Company the $1,370.50 claim, and then made demand upon the defendant for reimbursement. The defendant disclaimed any liability and refused to pay the plaintiff, who then brought this suit.

The plaintiff's amended declaration contained eleven counts, the first six being common counts, and the seventh, eighth, ninth, tenth and eleventh being special counts. The alleged warranty was set forth in the seventh and eighth counts, and a copy of the purchase order containing the cause of action and performance record of the previous six belts used on the installation were attached to and by special reference made a part of these counts. The defendant interposed a demurrer to these counts upon the ground that

the declaration did not embrace the entire warranty alleged to have been made by the defendant.

Rule 16 of the Common Law Rules provides that the plaintiff shall attach a copy of the contract or cause of action "or a copy of the portions thereof material to plaintiff's cause of action." The object of this rule, in requiring such a copy to be attached, is the same as that of old rule 14 for which it has been substituted, viz.: to apprise the defendant of the nature and extent of the cause of action alleged against him in order that he may plead thereto with greater certainty. Register v. Pringle Bros., 58 Fla. 355, 50 So. 584. If the defendant conceives that the cause of action so filed is not sufficiently full, certain and complete as to enable it so to plead to the declaration, its remedy, as further provided in the rule, is to move the court for an order requiring a more definite cause of action. See State v. S. A. L. Ry., 56 Fla. 670, 47 So. 986. This the defendant did, and the court granted such an order requiring the plaintiff to deliver to defendant a full and complete copy of the said "quotation dated 12/11/34 our request No. 1974."

The real basis of the defendant's position rests, as we see it, upon the ground that the American Agricultural Chemical Company's "request No. 1974" contained this statement:

"Note: You have the complete information as to the installation and operation of this belt. And we will leave it to you to recommend a belt you think most suitable."

The defendant asserts that this refers to and incorporates as a part of the contract the prior quotation request, being No. 1934, which was accompanied by the data sheet above referred to.

It is true that where a writing expressly refers to and sufficiently describes another document, that other document,

or so much of it as is referred to, is to be interpreted as part of the writing. See Canal Lumber Co. v. Florida Naval Stores & Mfg. Co., 83 Fla. 501, 92 So. 279; McGhee Interests v. Alexander Natl. Bank, 102 Fla. 140, 135 So. 545; 17 C. J. S. 717, Sec. 299; 3 Williston on Contract (1936) 1801, Sec. 628. Applying this criterion to our facts, we do not believe there was a sufficient description of and certainly there was no express reference to, the data sheet so as to include and make it a part of the contract.

It is a primary rule that, in construing contracts or instruments, we must seek the intention of the parties at the time of executing them. Holmes v. Kilgore, 89 Fla. 194, 103 So. 825. The intent of the parties with respect to any feature of the contract must be determined from an examination of the whole of the contract, and not of disjointed parts of it. It is not enough to look to an isolated phrase or paragraph of the contract in an effort to determine its true meaning. Canal Lumber Co. v. Florida Naval Stores & Mfg. Co., *supra*. And by this test, we further conclude that the instruments which the defendant contends are a part of the contract were excluded by the clear meaning of the purchase order and "quotation 12/11/34 our request No. 1974." The warranty which was made in the purchase order was that the belt should earn its cost against the average of the last six belts used on the installation, such average being shown "by performance record attached." As we construe this, it is clear the warranty was that the belt should earn its cost when credited with the average cost, as computed by the average cost per ton of the last six belts, when operated under those same conditions. That this was also the understanding of the manufacturer is similarly clear when we examine their reply to "quotation request No. 1974." The offer for bids requested informa-

tion as to whether the Main Belting Company would give the following guarantee:

"To earn its cost against the average cost of all former belts of the same type, measured in the cost of per tons handled, with prices of all belts brought to a common basis."

The Main Belting Company, in its reply, wrote immediately under this query: "see letter attached regarding guarantee." And in the accompanying letter they stated that the warranty was agreeable "if the conditions under which the belt would be operated were the same." We can only conclude that the conditions meant by "same" were those under which the former belts operated and not those described in a data sheet which was not sufficiently described or referred to.

After defendant's demurrer was overruled, it then filed its pleas to the amended declaration. By the third additional plea to the special counts, the defendant denied the breach of warranty, alleging that the failure, if any, of the original belting and the replacement belting furnished to the American Agricultural Chemical Company to earn its cost was not due to any defect or inherent deficiency therein, but was the result of an act or acts of the American Chemical Company in subjecting the belting to operating conditions materially higher in temperature to those (about 250° F.) against which the belting was warranted. Whether the court erred in overruling the demurrer to this plea, it is not necessary for us to determine.

The record shows both parties introduced evidence upon the issue of whether or not the belting had been operated under the same conditions as previous installations, the defendant's witnesses testifying that the temperatures to which the belts were exposed were unduly excessive, and the plaintiff's witnesses rebutting this. No greater burden than

required by law was imposed upon defendant. The court properly defined the issue presented by the third additional plea, and submitted the following charge to guide the jury in its consideration of the evidence:

"This is an affirmative plea, gentlemen, and the defendant must accordingly, to obtain a verdict thereunder, prove said plea by a preponderance or greater weight of the evidence. The defendant must prove by a preponderance, or greater weight of the evidence, that the subjecting by the American Agricultural Chemical Company of said belt to operating conditions materially higher in temperature than those to which the belting was warranted was the proximate cause of the failure of the belt to perform in accordance with said warranty."

This charge was not erroneous, for this Court stated in Mizell v. Watson, 57 Fla. 111, 49 So. 149, that "if the making of the sale and warranty were admitted, and the defendants would deny the breach of warranty, a plea of confession and avoidance would be proper." It was therefore incumbent that the defendant plead its defense and sustain it by the preponderance of the evidence. 55 C. J. 839.

We are now confronted with the question of whether or not an accord and satisfaction was entered into. The defendant urges that a contract of accord was formed as the result of certain correspondence which passed between the plaintiff and the Main Belting Company after the first belt became unsatisfactory. In reply to the plaintiff's notification that the first belt was failing, the Main Belting Company, who was not in privity with the plaintiff or the American Agricultural Chemical Company on the contract of warranty, recommended another type of belt which they felt would give satisfactory service and stated they were

willing to furnish this belt without charge "to settle up this matter." The plaintiff then wired them to rush shipment upon the replacement belt "as per your letter." It is the contention of the defendant that this constituted an accord, as a matter of law, of the claim for damages which the plaintiff had against the defendant, and the acceptance of the belt was a satisfaction thereof. To sustain his contention he calls our attention to the case of Sanford v. Abrams, 24 Fla. 181, 2 So. 373.

We believe the cases are distinguishable. It is to be observed that "whether there is an accord and satisfaction ordinarily involves a pure question of intention, which is, as a rule, a question of fact. If the evidence directly or through reasonable inference creates no conflict concerning the intention, it is a question of law. · Moers v. Moers, 229 N. Y. 294, 128 N. E. 202, 14 A. L. R. 225. In the case of Sanford v. Abrams, *supra,* the question was as to the effect and construction of certain letters and telegrams in which there was no doubt or conflict that the object and intent was to enter into a contract to settle a claim against the defendant; that is, both parties indicated assent, and the sole question being what was the bargain ·to which they had assented. In the case at bar there is no certainty that the object and intent of the correspondence was to settle the claim upon the warranty or whether it was merely an attempt to continue and complete the contract of warranty. At least, this was a question for the jury.

It will be noted that the offer to furnish the second belt came from the manufacturer, which is not a party to this suit, and not from the buyer or creditor. Hence, if the offerer did attach' to his offer the condition that the same, if taken at all, must be received in satisfaction of the claim in dispute, and the other party received it, he took it subject

to the conditions attached to it, and it would operate as an accord and satisfaction, even though the party, at the time of receiving the article, declared that he would not receive it in that manner, but only in an attempt to fulfill the obligation of his claim as far as it would extend. Sanford v. Abrams, *supra*. But, it should be observed that the debtor or offerer must make it clear that the tender he sends is offered only on condition that it is taken in full payment. See Bryan, Keefe & Co. v. Howell, 92 Fla. 295, 109 So. 593; 6 Williston on Contract (1936) 5220, Sec. 1856. Therefore, in the absence of such expression in clear and unambiguous terms, parol evidence may be introduced for the purpose of showing the essential matters concerning the transaction between the parties not contained in the writing. McClure v. Centry Estates, Inc., 93 Fla. 568, 120 So. 4.

The defendant further assigns as error the instruction which the trial judge voluntarily gave at the conclusion of his charge to the jury, which was, in brief, merely a summation of the instructions already given. It is a well announced principle of this Court that even though a portion of an instruction, standing alone, might be misleading or erroneous, it must be considered with and in the light of all the instructions and charges given, and if, when thus considered, the law appears to have been fairly presented to the jury, an assignment predicated upon such instruction must fail. Alford v. Barnett Natl. Bank, 134 Fla. 564, 188 So. 322. The court, at the defendant's request, did give the following instruction upon the same subject as that to which objection is made:

"The plaintiff is entitled only to one satisfaction of the claim he had resulting from the alleged failure of the first belting described in the pleadings to perform as warranted, and if you believe, after considering the evidence, that the

Main Belting Company furnished the second belting to the plaintiff in satisfaction of his claim, and that the plaintiff accepted the second belting as a satisfactory settlement of his claim, your verdict must be for the defendant, United States Rubber Products, Inc."

We cannot agree that the court's additional charge complained of tended to confuse or mislead the jury to the extent as to cause them to arrive at a wrong conclusion, and it does not constitute reversible error.

We have carefully examined the complete record and assignments of error, and considered the views of counsel as expressed in their able briefs, and our conclusion is that no reversible error has been made to appear and the lower court did not err in denying the defendant's motion for a new trial.

The judgment is, therefore, affirmed.

TERRELL, C. J., WHITFIELD and CHAPMAN, J. J., concur.