101 So.2d 390 (1958)
Reginald LALOW and Helene Lalow, Appellants,
v.
Sam L. CODOMO, Appellee.
Supreme Court of Florida.
March 12, 1958.
Rehearing Denied April 9, 1958.
*391 Alexander S. Gordon, Miami, and Nelan Sweet, Miami Beach, for appellants.
Patton & Kanner, Miami, for appellee.
PEARSON, District Judge.
The defendants appeal from a judgment based upon a jury verdict for the plaintiff, a real estate broker. The action was to recover a commission under a written contract granting to the broker an exclusive right to sell certain property. Under the assignments of error presented it is necessary to review the evidence in order to determine: (1) whether there was a basis in the evidence for a charge which was requested and not given as to the effect of bad faith by a broker, (2) whether the agreement by its terms limited the recovery to an amount less than the verdict, (3) whether the terms of the agreement precluded recovery upon the sale actually made. Each of these questions being determined in the negative, adversely to appellant, we find no error demonstrated.
In order to determine whether there was sufficient evidence of bad faith by the plaintiff broker toward the defendant employers, it is necessary to review the testimony upon which the appellant relies in this particular. We are concerned with whether there was sufficient evidence to raise the issue for the jury's consideration.
On May 17, another broker, Leslie E. Rose, went to the office of one Sidney Sherman, a third broker, and advised Mr. Sherman, in the presence of the plaintiff, that he had a customer for the Wohl Studio Apartments, who would be willing to pay $300,000 for same. Mr. Sherman, in the *392 presence of the plaintiff, advised Mr. Rose that the price was not sufficient. On May 18, 1955, Mr. Rose prepared a deposit receipt for the purchase of the property by his client for the amount of $310,000 and had a $30,000 check as a deposit.
This contract had an expiration date of 5:00 P.M. on May 20, 1955.
On May 18, 1955, the plaintiff, broker went to the defendants' home and made an offer to exchange the defendants' property for a second mortgage on a piece of property which the plaintiff and his father owned. Defendants advised the plaintiff that he would first have to consult with their attorney regarding this transaction.
The plaintiff prepared a contract for the exchange of the second mortgage on the property owned by the plaintiff and his father for the property owned by the defendants, and on Friday, May 18, 1955, the plaintiff brought the contract to the defendants' attorney for approval. The attorney, who was busy at the time, advised the plaintiff that he could not approve the contract as to form and offered to prepare an acceptable contract on the following Monday. Plaintiff objected to this and inquired whether or not defendants' attorney would approve the contract if it were prepared by the plaintiff's attorney. The attorney advised plaintiff that if the agreement prepared by plaintiff's attorney was acceptable, he would approve same.
A deposit receipt and a check upon the $310,000 offer, which was subsequently accepted, was prepared by the associate broker Rose on May 18th. There was no testimony that knowledge of the existence of this offer came to the plaintiff broker until some time on May 20th. The uncontradicted testimony of the plaintiff and another witness was that within thirty minutes after the plaintiff was informed of the existence of this written offer he obtained possession of the deposit receipt and check and delivered them to his principal and the offer was accepted.
It is contended that since the plaintiff broker did not immediately inform his employer there was an oral offer of $300,000 for defendant's property, the broker failed to act in accord with his confidential relationship. This Court has held that the relationship of real estate broker and principal exacts the highest degree of trust and confidence. Ahern v. Florida Real Estate Commission, 149 Fla. 706, 6 So.2d 857; Gabel v. Kilgore, 157 Fla. 420, 26 So.2d 166. Essentially the conduct of the plaintiff of which the defendants complain is that he failed to report to his principal that there was a prospect at the price of $300,000. This price would have produced a net to the principal of $277,500, after deduction of the commission of 7 1/2% which was claimed by the broker and that amount of commission was subsequently upheld by the jury. Under the terms of the agreement the broker was required to produce a net of $285,000. The record reveals that the broker through his associate succeeded in getting from this same prospect a signed deposit receipt and deposit at the purchase price of $310,000, and that the offer was promptly delivered. We agree with the trial judge that there was not sufficient evidence before the jury to require a charge that a broker who deals in bad faith with his principal forfeits his right to a commission.
The remaining assignments require an examination of the following agreement between the broker and principal:
"Dear Mr. Codomo:
"After we take title to the Wohl Studio Apartments located at 6865 Bay Drive that we on this day contracted to trade for our Broadwater Beach Apts. We hereby give you an Exclusive Right of Sale for a period of six months from the time we take title of the property under the following conditions.

*393 "We agree to sell the Wohl Apts. for $285,000.00 net to us, we will accept $60,000.00 cash payment. Balance above the first mortgage we agree to take back a purchase money mortgage at (6%) six percent interest and (4%) four percent amortization.
"This letter is meant to be a contract and cannot be cancelled by us until the expiration date six months from the date we take title to the property.
"Your brokerage will be paid by us on any amount above our price of $285,000.00 or any other deal acceptable to us.
 "Very truly yours,
 "/S/ Reginald Lalow
 Reginald Lalow
 "/S/ Helene Lalow
 Helene Lalow"
It is patent that this agreement, in which the parties overlooked the matter of the amount of commission to be paid, contained ambiguities. A great deal of testimony was taken in an attempt to determine the intention of the parties at the time the contract was made. The finders of fact determined that the parties intended a commission of 7 1/2% of the entire purchase price. There was testimony upon which this finding could be made. We will not disturb it here. Upton v. Hutchison, Fla. 1950, 46 So.2d 20; Glass v. Parrish, Fla. 1951, 51 So.2d 717, 721; Handel v. Rudnick, Fla. 1955, 78 So.2d 709.
Appellants contend that the last sentence of the agreement conclusively determines that the amount of the commission must be determined by a percentage of the amount by which the purchase price exceeded $285,000. Such a construction is possible but strained. It is not consistent with the second paragraph of the agreement where the sum of $285,000 is mentioned as the net price to be obtained. The intention of the parties must be determined from an examination of the whole contract and not from the separate phrases or paragraphs. United States Rubber Products v. Clark, 145 Fla. 631, 200 So. 385. Further, the actions of the parties may be considered as a means of determining the interpretation that they themselves have placed upon the contract. At the time of the closing of the sale at a price of $310,000 under the deposit receipt presented by the plaintiff, the defendants voluntarily paid the associate broker (Rose) a 5% commission on the entire purchase price. At that time they had no privity with the associate broker except through the exclusive sale contract which was the only listing outstanding. The trial judge did not commit error by his rulings which refused to accept defendants' contention that the agreement limited recovery to a commission upon the excess of the sale price above $285,000.
There remains for consideration the third question: whether the terms of the agreement precluded recovery upon the sale actually made. The record reveals that the defendants accepted the contract of sale proffered by the plaintiff on May 20th, 1955, and on that date they themselves had only a contract to purchase. The defendant took title to the property on June 9th, and immediately conveyed under the contract of sale which they had signed on May 20th. The defendants point out that the letter of employment expressly limited the period of employment of the plaintiff-broker to, "six months from the time we take title". Further, the defendants did not take title until after they had agreed to resell. It is forcefully argued that, therefore, the exclusive right to sell was not an effective employment upon which a claim for a commission could be based. However, the time that the work was done, i.e., the time the contract of resale was signed was not the determining factor. The employment of the plaintiff-broker *394 was outstanding and became effective for recovery by him the moment the defendants took title to the property. Even if it should be said that the plaintiff was not entitled to a commission at the time a purchaser was produced, it could not be said that he was not entitled to a commission after his principal took title, and the exclusive right of sale became effective and his principal sold the property.
Affirmed.
TERRELL, C.J., and HOBSON, THORNAL and O'CONNELL, JJ., concur.