**FIRST NATIONAL CITY BANK, etc., and Berry, Selvey & Cia, etc., Plaintiffs-Appellees,**

v.

**Calvin Gale BERRY and Leo Joseph Selvey, Defendants-Appellants.**

**No. 27904.**

United States Court of Appeals Fifth Circuit.

Jan. 27, 1970.

Rehearing Denied April 7, 1970.

M. Howard Williams, Tallahassee, Fla., for defendants-appellants.

Charles H. Spitz, A. Frank O'Kelley, Helen C. Ellis, Keen, O'Kelley & Spitz, Tallahassee, Fla., for plaintiffs-appellees.

Before JOHN R. BROWN, Chief Judge, and TUTTLE and MORGAN, Circuit Judges.

TUTTLE, Circuit Judge:

This is an appeal from a summary judgment in favor of the bank against two former officers, stockholders and directors who were also creditors of a Colombian corporation. The judgment of the trial court was that, as a matter of law, based on its construction of a limitation provision in the charter and of the minutes of a directors' meeting [1] there was no material issue of fact to be decided. The court construed these two documents in accord with the bank's contention and entered its order accordingly.

We agree that if the corporate resolution unambiguously meant what the trial court construed it to mean then it would have been appropriate for the entry of summary judgment.

The facts, taken most strongly against this appellee, as they must be, to test the propriety of the grant of a motion for summary judgment, depicted the following:

Berry and Selvey, two American nationals, were the owners of twenty-six shares each of a Colombian Society (corporation), Berry, Selvey and Cia, S.A. The remaining shares were owned by one Micolta, and another corporation, Industries Metalicas de Palmira. After some successful operations, this company became financially embarrassed. In May, 1965, there was outstanding total indebtedness of some 6,197,000 pesos (roughly $300,000.00) to suppliers, employees and banks in addition to sums due to stockholders for advances and to a corporation wholly owned by Berry and Selvey for "technical assistance."

At all material times the charter had a provision limiting the authority of the president to "withdraw funds without approval of the Board of Directors of the Corporation" in excess of the sum of 50,000 pesos.[2]

On May 26, 1965, a meeting of the full board of directors was held. The following is an agreed translation of this entire minutes of that meeting.[3]

"Proceedings of meeting #45

"Pertaining to the meeting held on May 26, 1965 by the Board of Directors of Berry, Selvey and Cia, S.A.

"The Board of Directors of Berry, Selvey & Cia meet in the office of the Manager of the Company in Palmira on May 26, 1965, at 8:30 a. m. Mr. Calvin G. Berry, Mr. Leo J. Selvey, Mr. Jorge Ortiz Mendez, Mr. Guillermo Micolta and Mr. Guillermo Hernandez attended the meeting. Dr. Jorge O. Mendez directed the session in his capacity of President of the Board of Directors. Mr. Efraim Lemes acted as secretary.

"The President of the Company requested the authority of the Board to sell the wire production machines and their spare parts at the price of $2,-540,000.00 minus $123,382 totaling a net value of $2,416,618.00 and the raw materials, basic wire and other materials required for the production of wire.

"Payment terms to conclude the deal will be: a cash deposit and the rest by credit letter payable in a period not exceeding 90 days also specifying that partial payments against delivery of machinery are accepted.

---

1. Both parties agree that primarily the interpretation of such writings is for the court and not a jury.

2. This statement of the limitation is taken from the brief of the appellee bank although in its order the trial court stated it: "The Charter (Deed of Constitution) of Berry, Selvey and Cia, SA, specifically provides that the president shall not be authorized to engage in any transaction on behalf of the corporation wherein the amount involved exceeds the sum of 50,000 pesos." Note, this statement excludes the admitted exception "without approval of the Board of Directors."

3. This is quoted from appellee Bank's brief.

"The President also requested authority to negotiate with the personnel and the Union the liquidation and payment of fringe benefits and other social benefits and bonuses.

"The product of the sale will be appropriated to pay the personnel and cancel debts of the firm.

"After careful examination of the points raised by the President of the Company and taking into account the present economic situation of the Company, the President of the Board, Dr. Jorge Ortiz Mendez, recommended the approval of the following proposal.

" 'The President of the Company, Mr. Calvin G. Berry, is authorized to carry out the negotiations and sale of the machines, spare parts, raw materials and other wire producing equipment under the aforementioned terms and conditions; he is also authorized to negotiate with the personnel and the Union the liquidation and payment of the social benefits and bonuses using the net value of the sale to cancel the debts of the company.'

"Having been placed before the meeting and discussed, the above proposal was approved unanimously.

"The President of the Company submitted a letter of I.F.C. to the Board regarding the conversations and the agreement reached in Washington in reference to the system of cancellation of the debt with this corporation. The Board took notice of this communication and agreement and approved it.

"In the absence of further items to be discussed, the meeting was adjourned at 10:30 after reading and approval of the proceedings.

"The President

"The Secretary"

The sale of the wire production machines, etc. was concluded and the cash payment of 1,078,361.18 pesos was received and deposited by Berry in the company's bank (plaintiff here). Within a few days Berry had arranged with the bank to transfer a total of 1,198,376.-26 pesos ($63,359.62) to the account of the corporation owned by him and Selvey, which account was in the Hollandsche Bank Unie N. V. in Curacao, Netherlands Antilles. These transactions were accomplished by oral requests under the direction of the Bogota manager of the First National City Bank, notwithstanding the 50,000 pesos limitation of which the bank was on notice.[4] In a short time Berry and Selvey had the funds transferred to the United States and have since claimed them as their own. They claim that the action of the Board authorized them to *negotiate and pay* to all employees the severance pay and equivalent of social security due as well as the amounts which they had loaned to the corporation. Corresponding payments were made to the other individual stockholder, Micolta, and one indebtedness was also paid to the corporate stockholder.[5]

Selvey was admittedly about to leave to seek opportunities in the United States. Berry deposed that he resigned his office at the directors' meeting, thus making him eligible for severance pay.

When Micolta realized that the two principal officers and stockholders had gone and that approximately half of the purchase price for the machinery had gone with them, the company made de-

4. It was stated that the bank was suffering under a strike and the clerk failed to check the master control cards and failed to obtain written authorization.

5. The Bank contends that this was mathematically impossible, but we are not advised of the cash flow of the corporation, or of later payments on the balance of the purchase of more than 1,000,000 pesos for the sale of the company's equipment. Moreover, for the purpose of considering a motion for summary judgment we must take the proof adduced by the appellant as true. Further Micolta seems to have agreed, in a later affidavit, that he received some payments at approximately the same time.

mands on the bank, basing its contention on the 50,000 peso limitation of authority contained in the charter. After long negotiations, the bank settled the claim by paying 650,000.00 pesos to the company, in return for which the company assigned to the bank its alleged claim against Berry and Selvey. This claim was that the payments were, because of the limitation in the charter, ultra vires.

The bank filed suit, jointly with Berry, Selvey and Cia, for recovery of the full amount of the funds transferred by Berry to himself and Selvey. Later, the Colombian corporation was voluntarily dismissed as a party plaintiff. The trial court held that the transfers were ultra vires and they were not authorized by action of the Board of Directors, and thereupon entered judgment for substantially the amount which the Bank paid in settlement, with interest.

No effort was made below, and thus none is made here to acquaint us with the Colombian law dealing with the entitlements of Berry and Selvey to any "fringe benefits and other social benefits and bonuses." Nor is there evidence of any contractual terms providing for these items, except Berry's testimony. This record was probably not in such shape as to permit a trier of the facts accurately to test the correctness of the amounts claimed by Berry and Selvey. Possibly fortuitously the amounts closely approximated the entire available bank balance. We need not search the record carefully enough to answer this question because the appellants do not seek a final judgment in their favor here; they merely object to the summary judgment against them. Moreover, both parties agree with the trial court that "the one issue to be resolved is whether the defendants were authorized to transfer the funds, which the corporation Berry, Selvey & Cia, S. A. received from the sale of its bead wire division from the corporation's account with the plaintiff's bank to an account which the defendants controlled in Curacao, Netherlands Antilles, and thereafter divert them to their own use." This question deals with legality of the transfer, not the amount.

As pointed out above, the trial court stated that no written demand in excess of 50,000 pesos was permitted by the charter. However, the court did consider the action taken at the May 26, 1965, meeting. The court held that this action, quoted in full above, "does not authorize the president to do *anything concerning the proceeds* of the sale of the bead wire division except to *negotiate* with the personnel and union *with a view toward eventual* payment of these items out of the proceeds by the corporation." (Emphasis added.)

The trial court, the two parties and this court all agree that the written language in the minutes is to be construed by the court to ascertain whether the 50,000 peso limit was waived by action of the Board.

Although the Bank appellee cites the Florida cases of Lalow v. Codomo, Fla. 1958, 101 So.2d 390; 7 Fla.Jur., Contracts, § 7, for the proposition that "the intent of the parties must be determined from an examination of the whole document and not from the separate phrases or paragraphs," there is nothing unique in the Florida rules of construction.[6]

As we read the entire minutes, we find we are unable to agree with the interpretation placed on the language of the resolution by the trial court. Here, the literal language speaks in terms of negotiating with the *personnel and the union* the *liquidation* and *payment* of the social benefits and bonuses *using the net value of the sale to cancel the debts of the company*. This language follows the recitation in the minutes outlining the proposal to sell the wire production ma-

---

6. No Colombian law was proved; thus the parties agree that, so far as any legal principles are involved, we look to the law of the forum.

chines, etc. for 2,416,618.00 pesos, and the following:

"The president [Berry] aslo requested authority to negotiate with the personnel and the union the *liquidation* and *payment* of fringe benefits and other social benefits and bonuses.

"The product of the sale *will be appropriated to pay* the personnel and cancel debts of the firm."

The entire issue in the trial court focused on the question of the power to *pay* in excess of 50,000 pesos. The issue was not whether Berry and Selvey were included in the term "personnel." In fact the trial court expressly stated:

"The definition of 'personal' [the Spanish word translated as 'personnel'] is immaterial since the authorization given by the resolutioil was only to negotiate and not to pay out the proceeds to anyone."

We are of the view that the action of the Board of Directors expressly authorized the president to negotiate with, and pay to "personnel" and union employees, out of the proceeds of the sale such social benefits, bonuses and debts as were owed by company to them. The bank seems not to dispute the contention of Berry and Selvey that they were included within the term "personnel."

Since the trial court found it unnecessary to consider the proof of amounts due to Berry and Selvey, and since these parties do not themselves claim they are entitled to a summary judgment in their favor, the case must be remanded to the trial court for the resolution of the factual issues and for such other proceedings as may be necessary to bring the suit to a conclusion.

The judgment is reversed and the case is remanded for further proceedings not inconsistent with this opinion.