311 So.2d 132 (1975)
Marjorie Baker MESICK, As Executrix of the Will and Estate of Lee L. Baker, Deceased, and Edmund S. Whitson, Jr., As Co-Receiver, Appellants,
v.
Annette Baker LOESER, As Executrix of the Will and Estate of Robert W. Baker, Deceased, and Rowan J. Helferty, Jr., As Co-Receiver, Appellees.
No. 73-477.
District Court of Appeal of Florida, Second District.
April 18, 1975.
Rehearing Denied July 17, 1975.
*133 Edmund S. Whitson, Jr. and Edmund S. Whitson, Sr., Whitson & Whitson, Clearwater, for appellants.
Leslie D. Franklin, St. Petersburg, Joseph G. Donahey, Jr., Donahey & Furnell, Clearwater, and Rowan J. Helferty, Jr., Dunedin, for appellees.
SCHEB, Judge.
By this appeal we are called upon to review the trial court's judgment ordering distribution of the partnership assets of the law firm of Baker & Baker on basis of one-third to the Estate of Lee L. Baker, deceased and two-thirds to the Estate of Robert W. Baker, deceased.
In 1953, Robert W. Baker joined his father, Lee L. Baker in the practice of law under the name of Baker & Baker in Clearwater, Florida, a firm in which Mary Lou Baker, a sister of Robert W. Baker had been an active member until 1957. There was no written partnership agreement. During 1964, while Lee L. Baker and Robert W. Baker were sharing profits on a 50/50 basis, the firm commenced representation of Charles D. Belcher in a substantial matter referred to herein as the "Belcher Litigation," and which eventually generated considerable legal fees.
On July 7, 1965, Lee L. Baker, then age 81, executed a Bill of Sale to his son, Robert, covering:
All interest of the first party (Lee L. Baker) in and to all assets of the partnership known as Baker & Baker, Attorneys, Smoyer Building, Clearwater, Florida, including but not limited to all furniture, furnishings and fixtures, law books, books of record, partnership accounts and office equipment and supplies.
The Bill of Sale recited ten dollars and other good and valuable considerations. After it had been signed, witnessed and notarized, Robert W. Baker placed it in an office safe in an area reserved for Baker family papers. At that time Robert W. Baker was substantially overdrawn as to his share of the profits of the law firm. After executing the Bill of Sale, Lee L. Baker continued in the firm although his professional activities were extremely limited. He remained an authorized signatory on the firm account and continued to draw checks on his capital account for payment of his personal expenses.
On December 11, 1965, approximately five months after receiving the Bill of Sale, Robert W. Baker died. Shortly thereafter Edmund S. Whitson Jr. joined the Baker & Baker firm and was later joined in the practice by his father, Edmund S. Whitson, Sr. Mr. Whitson, Jr., upon associating with the firm, prepared a letter purporting to renounce the Bill of Sale and stating it had been destroyed. This letter, signed by Lee L. Baker, was dispatched to William M. Goza, an attorney then representing Annette Baker, widow of Robert W. Baker. Lee L. Baker continued his minimal activities in the law practice until 1966 when he went into a nursing home. He was adjudicated an incompetent in 1967 and died on May 15, 1969. At the time of Lee L. Baker's death, attorneys' fees of approximately $400,000 were either realized or due the firm from the Relcher Litigation.
On May 29, 1969, the appellant Marjorie Baker Mesick, as executrix of the will of her late father, Lee L. Baker, brought suit against the appellee, Annette Baker Loeser, as executrix of the will of the late Robert W. Baker. The appellant sought to wind up the Baker & Baker partnership, and charged that the appellee was improperly exercising dominion over the assets of the firm. Although other minimal assets are involved, the parties acknowledge the fees resultant from the Belcher Litigation represent *134 substantially the extent of this controversy.
Alleging a 50/50 partnership existed between Lee L. Baker and Robert W. Baker until the latter's demise, the appellant contended the fees resultant from the Belcher Litigation should be divided equally between the estates of the two former partners. The appellee contended that Robert W. Baker received all of his father's interest in these fees by virtue of the Bill of Sale. During the pendency of the litigation the court appointed Mr. Whitson, Jr., counsel for appellant and Rowan J. Helferty, Jr., counsel for the appellee, co-receivers to hold and invest the Belcher funds, subject to further orders of the court. After receiving the evidence and hearing the extended arguments of counsel, the court on May 3, 1973, entered the following order:
1. That the Bill of Sale, dated July 7, 1965, entered as evidence by the Defendant in this cause, between the now deceased, LEE L. BAKER and ROBERT W. BAKER, was properly witnessed, notarized and delivered within the meaning of the law, and further, said Bill of Sale was properly completed but that the clear intent of the Bill of Sale was to have a prospective effect.
2. In finding that the Bill of Sale was validly executed and delivered but did have a prospective effect, the court further finds that all funds due the former partnership of Baker & Baker from and after the date of the Bill of Sale, July 7, 1965, that the following division of funds should be made; that is, one-third to MARJORIE BAKER MESICK, as Executrix of the Will and Estate of LEE L. BAKER, Deceased, Plaintiff, and two-thirds to ANNETTE BAKER LOESER, as Executrix of Will and Estate of ROBERT W. BAKER, Deceased, Defendant.
3. That the Defendant, ROBERT W. BAKER, at the time of his demise, was overdrawn in the capital account of the former partnership of Baker & Baker and said amount is due the Plaintiff herein, less credit for income of the partnership from fees from and after the Bill of Sale, dated July 7, 1965, in the manner previously set out above.
4. That the Plaintiff's request for attorneys' fees has not been shown to be due as a matter of law.
Based upon the foregoing finding, the court recited its order as follows:
ORDERED AND ADJUDGED that the Defendant, ANNETTE BAKER LOESER, as Executrix of Will and Estate of ROBERT W. BAKER, Deceased, does have and recover out of the funds from moneys due the former partnership of Baker & Baker, two-thirds of all moneys received, plus accumulated interest, and that the Plaintiff, MARJORIE BAKER MESICK, as Executrix of Will and Estate of LEE L. BAKER, Deceased, does have and recover out of the funds from moneys due the former partnership of Baker & Baker, one-third of all moneys received, plus accumulated interest, for which let execution issue.
IT IS FURTHER ORDERED AND ADJUDGED that the Order of Receivership entered in this cause on November 30, 1970, setting up co-receivers for certain moneys received for the Belcher case, be, and the same is hereby vacated and set aside and THE FIRST NATIONAL BANK, as depository agent for said funds, is hereby directed to release the funds to the respective parties accordingly, without further liability in releasing said funds.
IT IS FURTHER ORDERED AND ADJUDGED that the Plaintiff's request for attorneys' fees is hereby denied.
The court retains jurisdiction for the purpose of ordering the parties to comply with the executory provisions of this Judgment.
*135 Despite the numerous points raised, this appeal devolves into a question as to whether there was substantial competent evidence before the trial court to sustain that court's findings that the Estate of Lee L. Baker was entitled to one-third and the Estate of Robert W. Baker to two-thirds of the legal fees arising out of the Belcher Litigation.
The trial court reasoned the Bill of Sale, while validly signed and delivered by Lee L. Baker and appearing on its face to transfer all his interests in the law firm to his son, Robert W. Baker, nevertheless, operated only prospectively. That is to say, the transfer of the elder Baker's interest in the firm did not extinguish certain indebtedness due him from his son as represented by the books of account nor did it operate to divest him of the right to participate to some equitable extent in fees to eventuate from the Belcher Litigation.[1]
The evidence discloses that Lee L. Baker was an elderly practitioner who regarded his son Robert with great affection and desired that he have a firm hand in continuing the operation of the law firm. The elder Baker delivered the Bill of Sale which was retained in safe keeping in the office safe to which each of the parties had access. While there was evidence of an attempted revocation by letter prepared for signature of Lee L. Baker and signed by him after the death of Robert W. Baker, such purported revocation came shortly after the demise of Robert W. Baker and during a period when Lee L. Baker was upset and ill. Such purported revocation was rejected by the trial court.
A long time secretary who was close to the Baker family testified that she had asked Lee L. Baker if it was true that in view of the Bill of Sale he was no longer a partner. The elder Baker responded: *136 "Absolutely not, I have too much at stake." There was undisputed evidence that he continued minimal legal activities in the office with complete approbation of his son. This was consistent with the intent of the parties that the elder Baker would retain an entitlement to fees resultant from the Belcher representation as pre-existing law business.
We find substantial competent evidence to support the trial court's judgment that the Bill of Sale was valid but that it was not the intent of the parties that it should either (a) extinguish Lee L. Baker's rights in respect to Robert W. Baker's prior overdrafts, or (b) preclude the elder Baker from participating in fees generated from the pre-existing Belcher Litigation in which he continued in a role as counsel, albeit at a lesser level of activity.
We cannot agree with appellant's contention that the continued relationship between the elder Baker and his son implied a 50/50 entitlement between the parties. Here the evidence was consistent with a phasing down of the elder Baker's activities and with the younger Baker moving into a position of considerably greater involvement and responsibility. Lee L. Baker, nevertheless, continued to lend his prestige and experience to the firm in a role consistent with his age, seniority, and the family relationship involved.
Where a Bill of Sale is delivered by one partner to another, it is appropriate for the trial court to determine its scope and effect from the evidence of the circumstances surrounding its delivery and the conduct of parties in relation to one another and to the business of the partnership, 68 C.J.S. Partnership § 244; Somers v. Somers, 1930, 112 Conn. 364, 152 A. 142. This is in accord with the fundamental principle that in construing a contract the actions of the parties may be considered as a means of determining the interpretation that they themselves had placed on the contract. Lalow v. Codomo, Fla. 1958, 101 So.2d 390.
The major problem for the trial court was to determine a proper allocation of the Belcher fees between the estates of the two deceased partners since the fees, although definitized by a formal agreement after the Bill of Sale, were attributable to a substantial extent to services rendered prior to that time. The court's findings that Lee L. Baker's estate was entitled to one-third and Robert W. Baker's estate was entitled to two-thirds appears proper in light of the circumstances and conduct of the parties. These findings by the lower court as a trier of fact came to this court clothed with a heavy presumption of correctness and where there is substantial competent evidence to sustain the actions of the trial court, we cannot substitute our opinion on the evidence but rather must indulge every fact and inference in support of that judgment which was the equivalent of a jury verdict. Reserve Insurance Co. v. Earle W. Day & Co., Fla.App.2d 1968, 209 So.2d 709; Bowen v. Everett, Fla. App.2d 1967, 205 So.2d 536.
We dispose of appellant's claim for attorneys' fees for bringing funds into the decedent's estate by recognizing that any attorney who renders legal service to an estate may apply to the probate court by appropriate petition and notice for a determination of his entitlement. F.S. § 734.01. As to the receivers, however, the record discloses that each of them agreed to serve without fees as they were also serving as counsel for their respective clients.
Each of the parties sought an accounting in the trial court and the appellant has cited that court's failure to order an accounting as error. The court was proper in first appointing the receivers for the preservation and investment of the funds arising from the Belcher Litigation and then making a determination of the entitlement of the estates of the respective deceased partners. Now that entitlement has been established the trial court must consider whether an accounting is required *137 to determine the items referred to in Paragraphs 2 and 3 of its judgment.
Accordingly, since the court applied correct principles of law and did not misapprehend the effect of the evidence the judgment of the trial court is affirmed, however, the cause is remanded to the trial court to determine, by an accounting if deemed necessary, any matters required to implement the provisions of the judgment.
Affirmed and remanded.
HOBSON, Acting C.J., and GRIMES, J., concur.
NOTES
[1] The following comments of the trial court on January 12, 1972, after hearing all of the evidence, epitomize the court's reasoning as to the scope and effect to be given to the Bill of Sale, based on the circumstances surrounding its delivery and the conduct of the parties.

I think that the bill of sale clearly did not have the same force and effect and was not intended to have the same force and effect as a bill of sale that you or I might deliver to a chattel, that the sale of which we had negotiated with a stranger. I think the clear intent of the effect of the bill of sale was prospective. I think that from the time of the bill of sale headed in the direction of the future that the bill of sale was to act as sort of a resignation from the partnership. It was to say to Bob Baker, you are young and active and what business you accumulate, and paid for in the future, here is a document to show you are secure in continuing to handle things the way they are now handled... .
So that, if he was entitled to the bill of sale, something, entitled to a deed, a mortgage, you have to take into consideration all of the circumstances, the position of the parties and in reaching any results by a simple document and I do not believe there was any evidence presented that it was intended to be forceful and effective and harsh to the extent of extinguishing Lee Baker's financial position in the partnership as it existed on the date of the bill of sale.
.....
I would say this, I do not believe that the estate of Lee Baker is entitled to a full fifty percent fee of the Belcher fee, plus the credit for a bonus debit account, plus the note. But I do believe that the estate of Lee Baker is certainly entitled to be repaid Bob's debit account and the notes and perhaps some figure that would either have to be negotiated or calculated as some portion of the Belcher fee, less than one-half of it.
And, it would have to be, I think, calculated with a cutoff time as of the bill of sale. I think that that is the cutoff time. But, I believe there is something due for the matter coming into the office and for however long the effort continued and whatever was done and so forth, up to the time of the bill of sale, because up until that time, Lee Baker was a partner, and after that he was not. I don't think that you calculate difference of the fee on either extreme. I don't think you say that the whole fee accrued the day that the business walked in the office, so that half would go to each partner. I don't think you say that the entire fee accrued at the time it was paid so that the whole thing would go to Bob's estate. I don't choose either of those extremes. I don't think there is that clear intent of what they did. I think the clear intent of what they did is someplace in between that... .