[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-11084

_____

MICHAEL MARTINEZ,

as Owner of and for a 2019 22' Cape Horn,
hull identification number FAB22078E919,
her engines, tackle and appurtenances,

                                                                        Plaintiff-Appellant,

versus

ERIC REYNOLDS,

                                                                        Defendant-Appellee.

————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 4:20-cv-10129-JLK

————————————

Before NEWSOM and MARCUS, Circuit Judges, and STORY,* DISTRICT JUDGE.

STORY, District Judge:

Following a boating accident between Michael Martinez and Eric Reynolds, Reynolds filed a Petition for Exoneration From or Limitation of Liability in order to limit the liability he could personally incur from the accident. Martinez filed a claim for his alleged damages within that proceeding, and the parties voluntarily settled his claim and executed a Settlement Agreement and Release of Claims ("Settlement and Release").

After the settlement, Martinez filed his own Petition to similarly limit his own liability from the accident. The district court dismissed his Petition, finding that the Settlement and Release precluded its filing. Martinez appeals that dismissal, arguing that the Settlement and Release only released his own personal injury and property damage claims against Reynolds, not his right to bring the Petition. After careful review, we reverse the

_____

* Honorable Richard W. Story, United States District Judge for the Northern District of Georgia, sitting by designation.

district court's judgment and remand for proceedings consistent with this opinion.

## I

Martinez owned a 22-foot boat that he kept docked at the Anchorage Resort in Key Largo, Florida.  On December 30, 2019, Martinez left the dock in his boat with several passengers on board.  After an afternoon of fishing, around sunset, Martinez began driving his boat back to shore at approximately 30 miles per hour.  A 32-foot boat operated by Eric Reynolds collided with Martinez's boat.  Reynolds was driving approximately 55 miles per hour at the time of the collision, which caused damage to Martinez's boat and serious injuries to Martinez and his passengers.  The Florida Fish and Wildlife Conservation Commission charged Reynolds criminally for the collision and found that Martinez was not at fault.

As a result of the accident, on January 24, 2019, Reynolds filed a Petition for Exoneration From or Limitation of Liability pursuant to the Shipowner's Limitation of Liability Act, 46 U.S.C. § 30501, and Federal Rule of Civil Procedure, Supplemental Rule F.  Martinez asserted claims against Reynolds in this proceeding to account for his personal injuries and the damage to his boat.  Reynolds asserted a compulsory counterclaim against Martinez in the Limitation proceeding for his own alleged injuries and damages.  Martinez and Reynolds ultimately settled Martinez's claim, after which they executed a Settlement and Release dated September 21, 2020.

The Settlement and Release noted that both Martinez and Reynolds mutually participated in its drafting, and therefore its language would "not be presumptively construed either in favor of or against either of the Parties." The "Release of Claims" section stated, in pertinent part:

> Martinez does hereby release . . . Reynolds . . . of and from all manner of action and actions, cause and causes of action, claims the Party hereto made, could or should have made including, but not limited to any and all claims for negligence; intentional tort; and for all damages allowable, . . . ; common law, statutory, and bad faith actions, actions for subrogation, contribution and/or indemnity . . . and any sums or expenses whatsoever, including any claim or demand for arbitration, known or unknown, in admiralty, law or equity, presently existing or which might arise or be discovered in the future arising out of or resulting from any property damage, or injury(s) sustained by Martinez, on the Vessel including the boating incident involving Reynolds and Martinez on or about December 30, 2019 . . . and arising out of or resulting from the Incident and/or Limitation Action.

The Settlement and Release further reiterated that it was intended to fully settle, resolve, and release all of Martinez's claims against Reynolds for damages arising out of the accident. Finally, it acknowledged that Reynolds had filed a still-pending claim against Martinez for his own alleged personal injuries and property damage stemming from the accident. As such, it clarified that the Release was "specifically intended to release Reynolds from any further liability to Martinez for injuries and damages sustained by Martinez in the afore described incident" and "preclude[d] any further and future claims or counterclaims by Martinez against Reynolds arising out of the boating accident in question." The Release explicitly did not preclude Reynolds from proceeding with his own counterclaim for damages against Martinez arising from the boat collision nor did it waive any defenses that Martinez could raise in Reynolds' counterclaim against him.

Following the parties' settlement, on November 5, 2020, Martinez filed his own Petition for Exoneration From or Limitation of Liability in the United States District Court for the Southern District of Florida, seeking to limit his own liability stemming from the accident. Reynolds moved to dismiss the Petition, arguing that it was barred by the parties' Settlement and Release. Martinez argued that the Settlement and Release governed his own personal injury and property damage claims against Reynolds, not the other way around, and therefore did not bar his Petition.

The district court agreed with Reynolds, concluding that Martinez's Petition was a cause of action and that the Settlement

6                    Opinion of the Court                21-11084

and Release "released Reynolds from 'all manner of action and actions, cause and causes of action' that could have been brought by Martinez in connection with the subject boating collision." In reaching this conclusion, the district court focused almost exclusively on isolated phrases in the parties' Settlement and Release and the Limitation of Liability Act. And, as a result, the district court held that Martinez's Petition was barred by the Settlement and Release and dismissed Martinez's Petition.

Martinez timely appealed to this Court. He argues that the district court erred in dismissing his Petition for two primary and related reasons: (1) when read as a whole, such that every provision has meaning, the Settlement and Release does not prohibit Martinez's Petition; and (2) a Petition is defensive in nature and not the type of "cause of action" contemplated by the Settlement and Release.[1] Reynolds disagrees and believes that the district court accurately construed the Settlement and Release and therefore properly dismissed Martinez's Petition.

II

A

---

[1] We review *de novo* the grant of a motion to dismiss, accepting the allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor. *Paez v. Mulvey*, 915 F.3d 1276, 1284 (11th Cir. 2019) (citations omitted). We also review *do novo* the interpretation of a contract, including whether it is ambiguous. *Reynolds v. Roberts*, 202 F.3d 1303, 1313 (11th Cir. 2000) (citation omitted).

Martinez's primary argument is that the Settlement and Release must be read as a whole and put into context, so that every provision has meaning. And when that is done, he argues that two conclusions are inescapable: "the release only discharged Martinez's personal injury and property damage claims against Reynolds," and it "did not discharge or affect Reynolds' injury claims against Martinez" or "Martinez's right to defend those claims being made by Reynolds against him and to limit his liability."

"[A] settlement agreement is essentially a contract and is subject to the traditional rules of contract interpretation." *Norfolk S. Corp. v. Chevron, U.S.A., Inc.*, 371 F.3d 1285, 1290 (11th Cir. 2004) (citation omitted).

The parties agree that Florida law applies to construe the Settlement and Release. "The polestar guiding the court in the construction of a written contract is the intent of the parties." *Circuitronix, LLC v. Kapoor*, 440 F. Supp. 3d 1345, 1358 (S.D. Fla. 2020) (citation and quotations omitted). "To determine the intent of the parties, a court should consider the language in the contract, the subject matter of the contract, and the object and purpose of the contract." *Id.* (citation and quotations omitted). "[T]he contract language is the best evidence of the parties' intent at the time of the execution of the contract." *Taylor v. Taylor*, 1 So. 3d 348, 350 (Fla. Dist. Ct. App. 2009) (per curiam) (citation omitted). In addition, "courts must read provisions of a contract harmoniously in order to give effect to all portions thereof."

*S&B/BIBB Hines PB 3 Joint Venture v. Progress Energy Fla.*, 365 F. App'x. 202, 204 (11th Cir. 2010) (citations omitted); *see also Lalow v. Codomo*, 101 So. 2d 390, 393 (Fla. 1958) ("The intention of the parties must be determined from an examination of the whole contract and not from the separate phrases or paragraphs.") (citation omitted). Courts "may draw reasonable inferences from unambiguous contract language to determine what the parties intended." *GE Med. Sys. S.C.S. v. SYMX Healthcare Corp.*, 2021 WL 821433, at *12 (S.D. Fla. Mar. 4, 2021) (citation and quotations omitted).

A contract is ambiguous if it "is susceptible to two different interpretations, each one of which is reasonably inferred from the terms of the contract." *Frulla v. CRA Holdings, Inc.*, 543 F.3d 1247, 1252 (11th Cir. 2008) (citations and quotations omitted). However, "a party's interpretation of the contract that is unreasonable in light of the contract's plain language does not make the contract ambiguous." *Caracol Television S.A. v. Telemundo Television Studios, LLC*, 2022 WL 202546, at *3 (11th Cir. Jan. 24, 2022) (citation omitted). In addition, "it is the duty of the court, as near as may be, to place itself in the situation of the parties, and from a consideration of the surrounding circumstances, the occasion, and apparent object of the parties, to determine the meaning and intent of the language employed." *Circuitronix, LLC*, 440 F. Supp. 3d at 1359 (citation and quotations omitted).

In construing and interpreting the Settlement and Release here, the district court focused on two isolated provisions. First, it

21-11084                Opinion of the Court                9

observed that the Settlement and Release releases Reynolds "[o]f and from all manner of action and actions, cause and causes of action, claims the party hereto made, could or should have made . . . known or unknown, in admiralty, law or equity, presently existing or which might arise or be discovered in the future . . . arising out of or resulting from the Incident and/or Limitation Action." And, second, the district court noted that the Settlement and Release preserved Martinez's defenses to Reynolds' still-pending negligence claim.

If we looked at only those two provisions, we might reach the same conclusion as the district court. But that is not how we read and interpret contracts. Indeed, long-standing Florida law instructs us to determine the parties' intent through "an examination of the whole contract and not from the separate phrases or paragraphs." *Lalow*, 101 So. 2d at 393 (citation omitted). Doing so here leads to a different conclusion than the district court reached.

First, we look at the title of the document itself: "Settlement Agreement and Specific Release of Claims *by Michael Martinez*." The inclusion of the phrase "by Michael Martinez" at the end of the title suggests that the parties intended for the Settlement and Release to apply solely to Martinez's affirmative claims against Reynolds. Were that not the case, and the parties intended for the document to also apply to (and restrict) Martinez's right to file his own Petition, the parties could have used a different title. For example, they could have titled their document "Settlement

Agreement and Release of Claims by Michael Martinez and Eric Reynolds" or left out the parties' names altogether.

Next, the Recitals section states that "Martinez and Reynolds . . . desire to resolve the claim by Michael Martinez arising out of the Incident and Limitation Action." This language refers only to Martinez's claim against Reynolds, and unambiguously conveys the intent of the Settlement and Release—to voluntarily settle Martinez's affirmative claim for damages against Reynolds.

The "Release of Claims" section has a lot to unpack. The district court is correct that this section purports to release Reynolds "of and from all manner of action and actions, cause and causes of action, claims the Party hereto made, could or should have made . . . known or unknown, in admiralty, law or equity, presently existing or which might arise or be discovered in the future . . . arising out of or resulting from the Incident and/or Limitation Action." But focusing on that line ignores other language and key context in the section. For example, between that excerpted release language, the Settlement and Release details a number of types of claims that Martinez releases his right to bring, including negligence, intentional tort, and all sorts of monetary damages. Importantly, these are all affirmative claims that Martinez could have raised against Reynolds as a result of Reynolds' alleged liability to him. They have nothing to do with Martinez's own liability to Reynolds. Moreover, this section later states that it releases Reynolds from any claims "arising out of or

resulting from any property damage, *or injury(s) sustained by Martinez*, on the Vessel including the boating accident. . . ." Again, this language clearly contemplates the release of Martinez's affirmative claims against Reynolds for the injuries that he allegedly sustained and property damage he allegedly incurred in their accident. It says nothing about Martinez's own liability or his right to seek to limit that liability.

Several other provisions follow this same interpretive trajectory. The "Consideration and Payment to Martinez" section notes that Reynolds' settlement payment is made in release "of any and all claims by Martinez against Reynolds for damages arising out of the Limitation Action and/or Incident." The "Agreement to Hold Harmless and Indemnify" section discusses Reynolds' negligence, Martinez's injuries, and the potential of future claims or actions filed against Reynolds. And the "Not an Admission" section clarifies that the Settlement and Release "resolves disputed claims by Martinez against Reynolds."

Finally, lest there be any remaining doubt, the final paragraphs of the Settlement and Release "acknowledge[] that Reynolds has filed, and there is pending in this action, a claim by Reynolds against Martinez for personal injuries allegedly sustained by Reynolds in the afore described incident." Moreover, it states as follows:

> This release is specifically intended to release Reynolds from any further liability to Martinez for injuries and

> damages sustained by Martinez in the afore described incident. This release precludes any further and future claims or counterclaims by Martinez against Reynolds arising out of the boating accident in question. Nothing in this release will prevent or preclude in any way Reynolds' ability to proceed with his own claim for damages against Martinez arising from the subject boat collision. This release is not intended and does not waive any defenses which Martinez is entitled to raise in the claim by Reynolds against Martinez. These defenses include, but are not limited to, comparative fault by Reynolds.

This section again repeats what the rest of the Settlement and Release conveys—it specifically applies only to Martinez's affirmative claims against Reynolds for his own alleged injuries and property damages.

The parties strenuously dispute the import of the last two sentences of this section, which explicitly preserve Martinez's right to assert defenses to any claims by Reynolds. Reynolds believes these sentences contemplate *only* his existing counterclaim against Martinez and Martinez's right to raise defenses to that counterclaim, in part because "Martinez'[s] independent action for

exoneration and limitation of liability is not a defense 'in the claim by Reynolds against Martinez.'" We disagree. As we will next discuss, a Limitation proceeding is an inherently defensive action. As such, the text of the Settlement and Release preserved Martinez's right to assert defenses in one of two ways—directly in response to Reynolds' counterclaim, *or* through a Limitation proceeding. It does not bar Martinez's Petition.

Again, the court's role in construing a contract is to determine the intent of the parties by considering the contract's subject matter, its object and purpose, and, most importantly, its language. To do so, we must read *all* of the contract provisions together to give each of them meaning. Here, however inartfully the Settlement and Release was written and prepared, it is not ambiguous. To the contrary, when we review and interpret all of its provisions together, it is clear that the Settlement and Release was intended to resolve only Martinez's affirmative claims against Reynolds for his own damages that he allegedly incurred, and nothing more. It was not intended to preclude Martinez from filing his own Petition to limit his own liability stemming from the accident. If that is what the parties, and particularly Reynolds, meant for the Settlement and Release to say, then they could have written it to apply to and bar Martinez's Limitation proceeding. But they did not, and we will not read the Settlement and Release to apply more broadly than its terms clearly state.

Here, the district court focused on isolated phrases in the Settlement and Release rather than interpreting it as a whole,

erroneously concluding that the Settlement and Release barred Martinez's Petition.

## B

Even if we agreed with the district court's interpretation of the Settlement and Release, Martinez also argues that the district court erred in dismissing his Petition because such a Petition is defensive in nature and not the type of "cause of action" that is contemplated—and therefore barred—by the Settlement and Release. We agree.

Under the Shipowner's Limitation of Liability Act, 46 U.S.C. §§ 30501, *et seq.*, "a shipowner can limit its liability for certain claims involving its vessel to the value of the vessel." *In re Bertsch*, 540 F. Supp. 3d 1188, 1190 (S.D. Fla. 2021); *see also Orion Marine Constr., Inc. v. Carroll*, 918 F.3d 1323, 1325 (11th Cir. 2019) ("The Act establishes a procedure by which a shipowner can limit its liability for certain claims involving one of its vessels to the value of the vessel plus its then-pending freight.") (citing 46 U.S.C. § 30505(a)).  In other words, this Act allows a shipowner to seek to limit his or her liability following a maritime accident where there is a potential for multiple claimants against him or her.

"A shipowner can assert its right to limitation of liability in one of two ways.  First, the shipowner can claim limitation by pleading it as a defense in an answer to a claim in any court.  Alternatively, the shipowner can file a limitation of liability proceeding in federal district court." *El Paso Prod. GOM, Inc. v.*

*Smith*, 406 F. Supp. 2d 671, 675 (E.D. La. 2005) (citations omitted). Federal Rule of Civil Procedure Supplemental Rule F, Limitation of Liability, sets forth the applicable procedures that shipowners must follow to protect their right to limit liability. In evaluating a shipowner's right to limit his or her liability, the court first "determine[s] what acts of negligence or conditions of unseaworthiness caused the accident," and then "determine[s] whether the shipowner had knowledge or privity of those same acts of negligence or conditions of unseaworthiness." *Tug Allie-B, Inc. v. United States*, 273 F.3d 936, 944 (11th Cir. 2001) (citation and quotations omitted).

The district court concluded that a Petition for Exoneration From or Limitation of Liability was a "cause of action" as contemplated by the parties' Settlement and Release. As such, it held that Martinez's Petition must be barred because "Martinez cannot circumvent the purpose and effect of the settlement agreement and release, which was to ensure that Reynolds would have no further legal action instigated *against him* in any way in connection with the accident." In reaching this conclusion, the district court focused on isolated phrases in the Limitation of Liability Act. In particular, it noted that the statute permits a vessel owner to "bring a *civil action*" and "*file a complaint*" in federal district court. True enough. And it is also true that federal courts routinely refer to such Petitions as "causes of actions." *See, e.g.*, *In re Brown*, 766 F. App'x. 30, 32-33 (5th Cir. 2019) (discussing the shipowner's cause of action under the Limitation of Liability Act);

*In re Wellborn*, 2013 WL 2243088, at *1 (N.D. Fla. May 21, 2013) ("The Limitation of Liability Act [] provides a cause of action whereby a vessel owner facing liability for a maritime accident may file a petition in federal court seeking protection . . . .") (citation omitted).

However, those facts ignore the nature of a Limitation proceeding and overlook how other federal courts have treated them. Most obviously, a Limitation proceeding is not a typical adversarial proceeding, because a ship owner filing a Petition does not name defendants or assert affirmative claims against any defendants. Accordingly, the petitioner need not effectuate formal service of process on any potential claimants. To the contrary, after the ship owner files his or her Petition and clears the required procedural hurdles, the district court itself issues a notice to all potential claimants about the Limitation proceeding, instructing them to promptly file any claims that they may have against the petitioner. Any claimants are then responsible for entering the Limitation proceeding themselves by filing claims against the petitioner within the Limitation proceeding. That decision is wholly voluntary, though—a ship owner's filing of a Petition imposes no obligations on any potential claimants. Here, then, Martinez did not "instigate[]" any legal action "*against*" Reynolds, as the district court suggested, and Reynolds now argues.

In addition, Limitation proceedings are inherently defensive. *See, e.g., Corso v. DeWitt*, 180 B.R. 589, 592 (C.D. Cal. 1994) ("Appellant's limitation action is defensive rather than

offensive in nature.") (citation omitted); *Application of Sand Bar I, Inc.*, 1992 WL 84277, at *3 (E.D. La. Apr. 23, 1992) ("A limitation of liability action is so thoroughly defensive in nature . . . ."); *In re Indep. Towing Co.*, 242 F. Supp. 950, 953-54 (E.D. La. 1965) ("A petition for exoneration from or limitation of liability has always been construed as a defensive action and the proceeding apparently one in personam. . . . Therefore, as a defensive action, in personam, a petition for exoneration from or limitation of liability is the assertion of a personal defense.") (citations omitted).

Courts have long referred to them as such, and that makes sense—a party instituting a Limitation proceeding is not seeking to (and, indeed, cannot) recover any monetary damages from any potential claimants. *See Application of Sand Bar I, Inc.*, 1992 WL 84277, at *3 ("the vessel owner . . . never can recover money pursuant to that statute") (citation omitted). Just the opposite. Such a proceeding simply allows boat owners to protect themselves and limit their own liability. *Id.* ("A petition for limitation of liability is nothing more than a statutory procedure to secure a vessel owner's rights in defending a prospective suit for damages. It is not a suit itself, as contemplated by the Eleventh Amendment . . . ."); *see also In re Orion Marine Constr., Inc. v. All Potential Claimants*, 2021 WL 2779115, at *2 (S.D. Tex. July 2, 2021) ("And it is well-established that the Limitation of Liability Act is designed only to protect owners and to determine claims made against them.") (citations omitted).

Simply put, Martinez's Petition for Exoneration From or Limitation of Liability is not the type of "cause of action" that is contemplated by the parties' Settlement and Release here. Martinez did not file it against Reynolds or seek damages from him. Rather, he sought to limit his own liability for all potential claims stemming from the accident, including those by Reynolds, against him. Accordingly, even if we agreed with the district court's construction of the parties' Settlement and Release, which we do not, we nevertheless find that Martinez's Limitation proceeding is not barred by the Settlement and Release. The district court erred by holding otherwise.

## III

For the foregoing reasons, we reverse the district court's judgment granting Reynolds' motion to dismiss Martinez's Petition for Exoneration From or Limitation of Liability, and remand to allow Martinez to proceed with his Petition.

**REVERSED and REMANDED.**